Martin J. GIACONE, Plaintiff-Appellant,

v.

Richard S. SCHWEIKER,* Secretary of
Health and Human Services,
Defendant-Appellee.

No. 80–1092.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 21, 1980.

Decided Aug. 10, 1981.

* We substitute Richard S. Schweiker, the suc-
cessor to the original defendant Patricia R. Har-
ris, as Secretary of Health and Human Services
pursuant to Fed.R.App.P. 43(c).

William A. Browner, Jenner & Block, Chicago, Ill., for plaintiff-appellant.

James Wilson Miles, Dept. of Health & Human Services, Chicago, Ill., for defendant-appellee.

Before FAIRCHILD and CUDAHY, Circuit Judges, and TEMPLAR,** Senior District Judge.

CUDAHY, Circuit Judge.

In this appeal, plaintiff Martin J. Giacone seeks review of a district court order dismissing his complaint for lack of subject matter jurisdiction. The complaint requested judicial review of an administrative decision which denied Giacone's claim for additional retirement benefits under Title II of the Social Security Act (the "Act"). 42 U.S.C. § 401 *et seq.* (1979). The district court, adopting the findings and recommendations of a magistrate, concluded that Giacone failed to request reconsideration of his claim within the time limitations prescribed by the Social Security Act regulations. As a result, Giacone never obtained a "final decision" of the Secretary after a hearing on his claim. Since such a final decision is a prerequisite to judicial review of the denial of Social Security benefits under 42 U.S.C. § 405(g), the district court granted the Secretary's motion to dismiss Giacone's complaint for lack of subject matter jurisdiction. We reverse with instructions to remand to the Secretary for a new determination on whether Giacone had "good cause" for submitting a tardy request for reconsideration.

### I.

On June 14, 1967, Giacone filed a claim for retirement insurance benefits under the

** The Honorable George Templar, Senior District Judge for the District of Kansas, is sitting by designation.

Act. The Social Security Administration computed his "primary insurance amount" [1] and began to make the appropriate monthly payments to Giacone. Shortly after he began to receive these payments, Giacone returned to work.

He retired for the second time in early 1969 and applied for an increase in his Social Security benefits to reflect his earnings for this additional period of employment. When the Social Security Administration failed to act on Giacone's claim, Giacone contacted his Congressman, Representative John B. Anderson, for assistance. After Anderson's office queried the Director of the Great Lakes Program Service Center of the Social Security Administration as to the status of Giacone's claim, Giacone received an increase in his primary insurance amount.

Giacone subsequently challenged that increase because it was based on a table used to calculate primary insurance amounts in 1967, the year of his first retirement, rather than a similar table used to calculate primary insurance amounts in 1969, the year of his second retirement. Giacone contends that the Secretary's failure to use the 1969 table deprived him of at least $6800 in additional benefits over a period of several years. In a letter dated July 2, 1976, however, the Secretary denied Giacone's claim.

Giacone took the Secretary's letter to his local Social Security office in Rockford, Illinois, seeking an explanation for the Secretary's decision. According to the complaint, a clerk listened to Giacone's claim and told him that the case would be "looked into." Over the next six months, Giacone returned to the Rockford office on six separate occasions in an attempt to follow-up on the status of his claim.[2] On each visit, Social Security personnel offered various excuses for their failure to pursue Giacone's claim.[3]

On January 17, 1977, Giacone filed a formal request for reconsideration of the Secretary's July 2, 1976, denial of his claim for additional benefits. Regulations in effect at that time allowed a claimant six months to request reconsideration of an initial determination by the Secretary. 20 CFR § 404.911 (1976).[4] For Giacone, the six month period expired on January 7, 1977. Hence, his request for reconsideration, dated January 17, 1977, was ten days late. On June 2, 1977, the Secretary denied reconsideration of Giacone's claim on the grounds that the request was not timely filed.

1. The "primary insurance amount" is the measure for determining the amount of all benefits payable under Title II of the Social Security Act except for benefits to transitionally insured individuals, see 20 CFR § 404.113a (1979), and special payments to certain uninsured individuals age 72 or over. See 20 CFR § 404.374 (1979). A worker's "primary insurance amount" is computed on the basis of that individual's "average monthly wage," see 20 CFR § 404.203(c) (1979), and is equal to the worker's monthly old-age insurance benefit when such benefit is not reduced due to retirement before age 65 or increased because of delayed retirement credits. 20 CFR § 404.203(a) (1979).

2. The dates of these visits were October 8, 1976; December 3, 1976; December 22, 1976; December 24, 1976; December 28, 1976; and January 7, 1977.

3. During the October visit, Giacone was told that his file could not be reviewed until the office received certain materials from Chicago. The clerk promised Giacone that he would be contacted as soon as the file was complete.

When Giacone returned to the office more than two months later, the information from Chicago had still not arrived. On Christmas Eve, the clerk finally admitted to Giacone that the file was complete, but indicated that it would not be reviewed until after the holidays. Giacone therefore returned to the office on December 28, 1976, only to discover that once again, no progress had been made on his claim. During this visit, the Assistant Manager referred to Giacone as "the wise guy who went to John Anderson" and threatened to "fix [Giacone] for going to the Congressman." Similarly, on Giacone's final trip to the office on January 8, 1977, a clerk told him that he could "keep coming back here until hell freezes over, but these figures will never change."

4. On November 1, 1976, Section 404.911 was amended to require that requests for reconsideration be filed within 60 days after the date of the receipt of notice of the initial determination. 41 Fed.Reg. 47,917 (1976).

Later, on July 7, 1978, Giacone submitted a request for a hearing before an administrative law judge. Under Social Security Administration regulations, an individual has a right to an administrative hearing only after the Secretary has made both an initial and a reconsidered determination in the case. 20 CFR § 404.917 (1979). Since the Secretary had not made a reconsidered determination of Giacone's claim, the ALJ treated the request for a hearing as a request for an extension of time to file for a reconsidered determination. Such extensions are routinely granted when a claimant is able to demonstrate "good cause" for the filing of a tardy request for reconsideration. 20 CFR § 404.953–404.954a (1979). Giacone, an elderly man with an eighth grade education, who pursued his claim through the administrative process without benefit of counsel, was not informed of the "good cause" extension regulations or that "good cause" was even an issue and he failed to present any evidence to the ALJ on this issue. As a result, the ALJ ruled that Giacone failed to establish "good cause" for his tardy request for reconsideration and dismissed the case on the grounds that Giacone had no right to an evidentiary hearing in the absence of a reconsidered determination. Giacone petitioned the Appeals Council for review of the ALJ's ruling, but this petition was similarly denied.

On October 11, 1978, Giacone, acting *pro se*, filed suit in the United States District Court for the Northern District of Illinois seeking review of the denial of his claim for additional benefits. The Secretary subsequently moved to dismiss the case and the matter was assigned to a magistrate. After reviewing the administrative decision and submissions by the parties, the magistrate concluded that Giacone's failure to submit his request for reconsideration of the Secretary's decision within the six-month time limit precluded judicial review of Giacone's claim. On December 19, 1979, the district court entered an order adopting the magistrate's report and dismissing the complaint for lack of subject matter jurisdiction. After Giacone instituted this appeal, counsel was appointed to represent him before this court.

## II.

■ Title II of the Social Security Act and the regulations which accompany it attempt to create an orderly, and not unduly vexatious, system for administrative and judicial review of the unimaginable number of decisions of claims for retirement and disability benefits filed under the Act. *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). An individual steps up to the administrative starting line by filing a claim for benefits with the Social Security Administration. The gun sounds with the decision to grant or deny this claim, which is known as the "initial determination" of the Secretary. 20 CFR §§ 404.905–404.907 (1979). The claimant who receives an adverse "initial determination" satisfactorily jumps his first hurdle by filing a request for reconsideration. 20 CFR §§ 404.909–404.913 (1979). The Secretary then acquires discretion to review the merits of the claim for a second time and issue what is impressively denominated a "reconsidered determination." 20 C.F.R. § 404.914 (1979). After obtaining both an initial and reconsidered determination, the dissatisfied claimant, now breaking into full stride, files for an evidentiary hearing before an administrative law judge. 42 U.S.C. § 405(b) (1979); 20 CFR §§ 404.917–404.919 (1979). Before breaking the ribbon at the end of the administrative finish line, the claimant must appeal the ALJ's hearing decision to the Appeals Council, which is the final arbiter and "supreme administrative court" in the agency process. 20 CFR §§ 404.945–404.947a (1979).

Judicial review of individual claims for benefits is permitted only in accordance with the provisions of Section 405(g) of the Act. 42 U.S.C. § 405(h) (1979); *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). Before a federal district court may

acquire jurisdiction of an action pursuant to Section 405(g), the claimant must have received a "final decision of the Secretary made after a hearing" to which the claimant was a party. 42 U.S.C. § 405(g) (1979). Although a decision rendered on a claim at each stage of the administrative process is final and binding on the parties,[5] the regulations define a "final decision of the Secretary" for the purpose of Section 405(g) as a decision rendered by the Appeals Council which either reviews or denies review of a determination made by an ALJ after an evidentiary hearing on the merits of the claim. 20 CFR §§ 404.940, 404.951 (1979). Thus, the statute and the regulations permit the federal courts to review only a narrowly circumscribed sort of decision by the Secretary, namely, one which is "final" and "made after a hearing." *Salfi*, 422 U.S. at 764, 95 S.Ct. at 2466.

In the instant case, Giacone obtained a "final decision" from the Appeals Council, which, for administrative purposes, effectively concluded his appeal. But the district court dismissed Giacone's complaint because the Appeals Council decision, which was not "made after a hearing," was insufficient to confer jurisdiction under Section 405(g). Giacone maintains, however, that this determination by the Appeals Council was a "final decision" sufficient to confer jurisdiction on the district court despite the absence of a hearing. In support of this argument Giacone cites Section 422.210(a) of the Social Security Act regulations which provides:

> A claimant may obtain court review [1] of a decision by a presiding officer if the Appeals Council has denied the claimant's request for review or [2] of a decision by the Appeals Council when that is the final decision of the Secretary.

20 CFR § 420.210(a) (1979). Giacone suggests that, whether the Appeals Council decision is interpreted as a denial of Giacone's request for review or as a final decision by the Secretary, this regulation provides an independent jurisdictional basis for Giacone's complaint.

■ Although we believe that the district court erred in dismissing Giacone's complaint, we decline to adopt Giacone's jurisdictional analysis, which is in direct conflict with the clear language of the Social Security Act. Section 405(h) states, "[n]o findings of fact or decision of the Secretary shall be reviewed by any person, tribunal or governmental agency except as herein provided." 42 U.S.C. § 405(h) (1979). The Supreme Court has concluded that this provision was intended to "prevent review of decisions of the Secretary save as provided in the Act, which provision is made in § 405(g)." *Salfi*, 422 U.S. at 757, 95 S.Ct. at 2463. The regulations promulgated pursuant to the Act must be construed to carry out the clear intent of this statutory language. *Rucker v. Wabash R.R.*, 418 F.2d 146, 149–50 (7th Cir. 1969). Section 405(g) confers jurisdiction to review an administrative denial of Social Security benefits only when the claimant had obtained a "final decision by the Secretary after a hearing." *Sanders*, 430 U.S. at 108, 97 S.Ct. at 986; *Salfi*, 422 U.S. at 764, 95 S.Ct. at 2466. To construe Section 422.210(a) as an independent basis for judicial review as Giacone suggests would circumvent the hearing requirement and contradict the express command of Section 405(g). Thus, the denial of Giacone's claim is reviewable under Section 405(g) or not at all.

■ Giacone suggests that the provisions of Section 405(g) permit this court to review a determination that a claimant failed to establish "good cause" to file a late request for reconsideration. Since a "good cause" determination is left primarily to the Secretary's discretion, the standard for review, according to Giacone, is whether the Secretary acted arbitrarily or unreasonably in deciding that a claimant lacked good cause to file a tardy request. This argument is not persuasive, however, when considered in light of the Supreme Court's deci-

---

5. *See* 20 CFR §§ 404.908, 404.916, 404.940, 404.951 (1979).

sion in *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).[6]

In *Sanders*, the Court held that Section 405(g) did not authorize judicial review of alleged abuses of agency discretion in refusing to reopen a prior application for Social Security benefits. *Id.* at 107–08, 97 S.Ct. at 985. Emphasizing that Section 405(g) "clearly limits judicial review to ... a 'final decision of the Secretary made after a hearing,'" the Court noted that the Act does not require a hearing prior to the denial of a petition to reopen a final decision on an individual claim for benefits. *Id.* at 108, 97 S.Ct. at 986. *See* 42 U.S.C. § 405(b) (1976). Since the opportunity to reopen a final decision was conferred upon claimants by the Secretary's regulations rather than by the Act itself,[7] the *Sanders* Court concluded that judicial review of the denial of a petition to reopen would "frustrate the Congressional purpose, plainly evidenced in § [4]05(g) to impose a ... limitation upon judicial review of the Secretary's final decision on the initial claim for benefits." *Id.*

The instant case presents a closely analogous problem. Claimants are afforded an opportunity to obtain an extension to file a request for reconsideration pursuant to the Secretary's regulations, and the Act permits such a request to be denied without a hearing. 42 U.S.C. § 405(b) (1979); 20 CFR §§ 404.953–404.954a (1979). "[W]ere we to recognize a rule authorizing judicial review of refusals to extend filing deadlines different from that imposed by the Supreme Court with regard to requests to reopen, claimants could circumvent the *Sanders* holding merely by filing for extensions." *Watters v. Harris*, 656 F.2d 234 (7th Cir. 1981). Such a result would subvert the express language of Section 405(g) and would undermine the entire administrative

superstructure created by the Social Security Act. "Congress' determination to limit judicial review [of Social Security claims] is a policy choice obviously designed to forestall repetitive or belated litigation of stale eligibility claims. Our duty, of course, is to respect that choice." *Sanders*, 430 U.S. at 108, 97 S.Ct. at 986.

■ Our decision with respect to review of "good cause" determinations does not, however, entirely preclude judicial review of Giacone's complaint under Section 405(g). Although the jurisdictional limitations of Section 405(g) are quite specific, they are not all-embracing. In *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court explained that a final decision by the Secretary after a hearing rests upon two prerequisites: 1) the presentation of a claim for benefits; and 2) the exhaustion of administrative remedies. Since the presentation of a claim for benefits is indispensable to obtaining a decision of any type, the first prerequisite is a purely jurisdictional requirement with which compliance is mandatory. *Id.* at 328, 96 S.Ct. at 899. In the instant case, it is undisputed that Giacone submitted such a claim to the Secretary.

■ Compliance with the second requirement, however, may be waived in certain circumstances. If a claimant raises a constitutional challenge which is entirely collateral to his claim of entitlement, and "the claimant's interest in having the issue resolved promptly is so great that deference to the agency's judgment is inappropriate," the court may review the case pursuant to Section 405(g) despite the claimant's failure to exhaust administrative remedies. *Id.* at 330, 96 S.Ct. at 900. We believe that Giacone's "good cause" argument gives rise to

---

**6.** The cases cited by Giacone to support Section 405(g) jurisdiction of "good cause" determinations are primarily pre-*Sanders* decisions and are therefore inapplicable to the instant case. *See, e. g., Gardner v. Moon*, 360 F.2d 556

(8th Cir. 1966); *Langford v. Flemming*, 276 F.2d 215 (5th Cir. 1960); *Clow v. Gardner*, 257 F.Supp. 148 (E.D.Wis.1966).

**7.** *See* 20 CFR § 404.957 (1976).

a due process claim sufficiently grave to permit us to waive his failure to obtain a final decision of the Secretary after a hearing under the *Eldridge* analysis.

■ Giacone contends that the ALJ's failure to inform him that "good cause" for his tardy request for reconsideration was at issue deprived him of due process. In determining what process is due a Social Security claimant under these circumstances, we must examine:

1) "the private interests that will be affected by the official action;"

2) "the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards;" and

3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Mathews v. Eldridge*, 424 U.S. at 335, 96 S.Ct. at 903.

In the instant case, the claimant's interest in receipt of the full amount of benefits due under the Act is exceedingly strong. An erroneous determination of a claimant's primary insurance amount could cause major financial hardship for an elderly or disabled individual who may be entirely dependent upon these monthly payments for support. Social Security beneficiaries thus deserve full due process protection while pursuing a disputed claim for benefits through the twists and turns of the administrative process.[8]

The risk of an erroneous deprivation of benefits through the failure to inform a claimant of the "good cause" issue is also very great. A "good cause" determination

essentially seals the fate of a Social Security claimant who has submitted a tardy filing. If "good cause" is established, the individual will be able to obtain further administrative and judicial review of the merits of the claim. Without a showing of "good cause," further review of the claim is unlikely. Thus, the establishment of procedural safeguards to inform claimants of the existence and the importance of the "good cause" determination would provide valuable protection against the erroneous denial of Social Security benefits. Here, the claimant contends that he was seriously and substantially misled by the fabian tactics of the Rockford Social Security office. He thus had a persuasive story to tell had he been on proper notice that the causes of delay were in issue.

■ The government's interest in the efficient and economic administration of the Social Security system would not be significantly affected by the institution of a notice requirement in cases where "good cause" is in issue. At most, this new procedure would require a separate mailing to claimants who have submitted tardy filings to the Social Security Administration informing them of the availability of extensions of the filing deadline upon a showing of "good cause" and, of course, the considerations which are involved in a "good cause" determination. *See* 20 CFR §§ 404.953– 404.954a (1979). It may be entirely possible, however, to amend existing notice forms to add the necessary "good cause" extension information. In view of the importance of the "good cause" determination to an individual seeking review of the merits of a tardy claim, we believe that this relatively simple and inexpensive procedure is justified. Therefore, we conclude that in this case, where serious, if not outrageous and misleading conduct by agency employ-

---

**8.** The Government's claim that Social Security benefits do not constitute a property interest sufficient to invoke due process protection is erroneous. The Supreme Court settled this issue in *Mathews v. Eldridge*, 424 U.S. at 332, 96 S.Ct. at 901, when it stated, "[t]he interest of

an individual in continued receipt of these benefits is a statutorily created 'property' interest protected by the Fifth Amendment." *See also Mattern v. Mathews*, 582 F.2d 248 (3d Cir. 1978), *cert. denied*, 443 U.S. 912, 99 S.Ct. 3101, 61 L.Ed.2d 876 (1979).

ees is alleged, the ALJ's failure to inform Giacone that "good cause" was in issue deprived Giacone of his right to due process. *Cf. Carey v. Quern*, 588 F.2d 230 (7th Cir. 1978). In light of this constitutional error, we have jurisdiction of the cause. *Mathews v. Eldridge*, 424 U.S. at 330–31, 96 S.Ct. at 900.

The record before us, while based primarily upon Giacone's allegations, presents a persuasive basis for the contention that Giacone has good cause for filing a tardy request for reconsideration and should have been granted an extension of the filing deadline. Section 404.954a provides:

> [g]ood cause for failure to file a timely request may be found where such failure resulted from the following circumstances:
>
> (e) The individual requested additional explanation concerning the Social Security Administration's decision within the time limit, provided that, within 60 days[9] after receipt of such explanation he requested reconsideration or hearing, ...;
>
> (f) The individual was furnished incorrect or incomplete information by the Social Security Administration or was otherwise misled by a representative of the Social Security Administration about his right to request reconsideration, hearing, or review, or to begin a civil action.

20 C.F.R. § 404.954a (1979). In the instant case, Giacone requested an explanation of the Secretary's denial of his claim for benefits immediately after receiving notice of the Secretary's initial determination. According to Giacone, his repeated and persistent attempts to follow up on the status of his claim were met with inexcusable delay and verbal harassment. In the end, he never did receive the requested explanation for the Secretary's decision from the Rockford Social Security office. If the facts as alleged in the complaint are true, the provisions of Section 404.954a(e) and (f), would

compel a finding that Giacone had "good cause" for filing his request for reconsideration ten days late.

Accordingly, we reverse the order of the district court dismissing Giacone's complaint for lack of subject matter jurisdiction with instructions to remand the case to the Secretary of Health and Human Services for a prompt determination of the "good cause" issue.