Edna JOHNSON and Jerome Montgomery, on their behalf and on behalf of all others similarly situated, Plaintiffs,

v.

Margaret HECKLER, Secretary, Department of Health and Human Services, Defendant.

No. 83 C 4110.

United States District Court, N.D. Illinois, E.D.

Dec. 7, 1983.

Joseph Antolin, Robert E. Lehrer, John Bouman, Cathleen Cohen, Legal Assistance Foundation, Chicago, Ill., for plaintiffs.

Linda Wawzenski, Asst. U.S. Atty., Chicago, Ill., for defendant.

MEMORANDUM OPINION AND ORDER

BUA, District Judge.

Plaintiffs Edna Johnson and Jerome Montgomery have moved to maintain this suit as a class action pursuant to Fed.R. Civ.P. 23. For the reasons set forth below, plaintiffs' motion is hereby granted.

### Background

Named plaintiffs Edna Johnson and Jerome Montgomery bring this action to challenge certain interrelated regulatory policies of defendant, the Secretary of the Department of Health and Human Services (the Secretary), governing the evaluation of disability claims brought under the Old Age, Survivors and Disability Insurance ("OASDI") program and the Supplemental Security Income ("SSI") program. The Secretary's sequential regulatory scheme, by which she evaluates disability claims under either program, 20 C.F.R. §§ 404.1520 *et seq.* and 416.920 *et seq.*, interprets the statutory disability requirements of 42 U.S.C. §§ 423(d) and 1382c(a)(3)(A), (B), (C) to require each claimant to initially establish that he or she has a "severe physical or mental impairment." In determining whether a claimant has a "severe" impairment, it is defendant's policy: (1) to refuse to consider vocational factors and residual functional capacities, 20 C.F.R. §§ 404.-1520(c) and 416.920(c); [1] and (2) to refuse to combine "nonsevere" impairments, 20 C.F.R. §§ 404.1522, 416.922 [2] and Social Security Ruling ("SSR") 82–55 (1982). Plaintiffs allege in their First Amended Complaint that these two interrelated regulatory policies violate their statutory rights under 42 U.S.C. §§ 423(d) and 1382c(a)(3)(A), (B), (C). In addition, plaintiffs allege that the Secretary's policies violate their constitutional right to equal pro-

---

**1.** 20 C.R.F. §§ 404.1520 and 416.920 (1982) were promulgated as final regulations to be effective in February, 1979. 40 Fed.Reg. 55363 and 55371 (November 29, 1978) to be codified as 20 C.F.R. §§ 404.1503(c) and 416.903(c). These regulations were recodified as 404.-1520(c) and 416.920(c) in 45 Fed.Reg. No. 163 (August 20, 1980).

**2.** 20 C.F.R. 404.1522 and 416.922 (1982) were promulgated in August, 1980. 45 Fed.Reg. 55566 *et seq.* (August 20, 1980).

tection under the due process clause of the Fifth Amendment to the U.S. Constitution.

The proposed definition of the class, as stated in plaintiffs' amended motion for class certification, includes:

> All persons in Illinois who are filing or have filed applications for disability benefits under Title II and/or Title XVI of the Social Security Act, and whose benefits are being or have been denied pursuant to the policies set forth in 20 C.F.R. §§ 404.1520(c) and .1522, 416.920(c) and .922 (1982), and Social Security Rulings cum. ed. 82–55 (1982); and all recipients of such benefits who are making or have made claims for continued benefits (through participation in a Continuing Disability Interview), and whose benefits are being or have been terminated pursuant to the same policies.

To satisfy the prerequisites for certification of a class action, plaintiffs have the burden of showing that:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

Once these four prerequisites are met, plaintiffs must further satisfy one of the requirements under Rule 23(b). Plaintiffs assert that their claim is cognizable under Rule 23(b)(2) as it is one in which:

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Fed.R.Civ.P. 23(b)(2).

## I. Prerequisites Under Fed.R.Civ.P. 23(a)

### A. Numerosity

Plaintiffs estimate that the proposed class contains well in excess of 15,300 persons. This calculation is based on government statistics, and, although admittedly imprecise, is a reasonable way of gauging the size of the class.[3] Plaintiffs' sources and estimates constitute sufficient evidence that joinder is impracticable. *Vergara v. Hampton,* 581 F.2d 1281, 1284 (7th Cir. 1978).

The Secretary, however, contends that the proposed class contains an unknown, but potentially substantial, number of individuals over whom this Court has no jurisdiction, and that consequently, plaintiffs have not shown that the class is so numerous that joinder is impracticable. The gist of the jurisdictional challenge is that class members have failed to exhaust their administrative remedies under the Social Security Act.

The jurisdiction of this Court over appeals from Social Security rulings derives from the Social Security Act, 42 U.S.C. § 405(g).[4] Section 405(g) permits appeals

---

**3.** The Social Security Administration published statistics on Illinois' share of disabled workers receiving OASDI benefits in 1980. Plaintiffs applied to this figure the percentage of all OASDI disability claimants nationally who had benefits denied or terminated because their impairments were considered "not severe." The source for this second number was a report of the U.S. House of Representatives Ways and Means Committee. The resulting figure approximated the number of OASDI recipients in Illinois whose benefits were terminated. Assuming a margin of error as great as 50 percent, the number is still well over 7,000. Furthermore, plaintiffs point out that their estimate is understated because it covers only one year of a three and a half year period, and does

not include any of the class members whose claims arose under SSI.

**4.** Plaintiffs also invoke this Court's jurisdiction under 42 U.S.C. § 1383(c)(3). Section 1383(c)(3), which pertains to Title XVI (Supplemental Security Income For Aged, Blind, & Disabled), is the counterpart to § 405(g) (which pertains to Title II (Federal Old-Age, Survivors, & Disability Insurance Benefits). The language of § 1383(c)(3) clearly subjects it to the principles contained in § 405(g). Section 1383(c)(3) reads as follows:

> The final determination of the Secretary after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the

to federal district courts by those who claimed benefits under Titles II or XVI, but who had such claims denied or terminated by the Secretary. A threshold requirement for an appeal to this Court under § 405(g) is a "final decision of the Secretary made after a hearing."

The U.S. Supreme Court, in a series of decisions, has viewed § 405(g) as containing two components: (1) a claim for benefits must have been filed; and (2) the Secretary must have made a final decision on that claim. *See e.g., Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1975); *Califano v. Yamasaki,* 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). The first of these requirements is viewed as a *sine qua non* to the exhaustion of a claimant's exhaustion of administrative remedies. The second requirement, however, unlike the first, may be waived under appropriate circumstances. *Id.* 424 U.S. at 330, 96 S.Ct. at 900.

It is the second requirement of § 405(g)—that of a final administrative hearing—that forms the basis for the Secretary's objection to plaintiffs' amended class definition.[5] The Secretary contends that the claims of an unknown, but potentially great number of class members have not yet been finally disposed of in administrative hearings. The Secretary emphatically maintains that she has not waived the final hearing requirement as to these claimants, and as a result, a significant number of proposed class members may not invoke the jurisdiction of this Court. Plaintiffs argue,

however, that the Secretary's nonwaiver is not an insurmountable obstacle to this Court's jurisdiction over the affected class members, because under certain conditions, the court itself has the authority to waive a final administrative hearing under § 405(g).

The Supreme Court and the Courts of Appeals, including the Seventh Circuit, have made it clear that if the Secretary refuses to waive exhaustion, the court should do so under certain conditions. *Mathews v. Eldridge,* 424 U.S. at 328–30, 96 S.Ct. at 899–900; *Giancone v. Schweiker,* 656 F.2d 1238, 1241–43 (7th Cir.1981); *Wright v. Califano,* 587 F.2d 345, 348–50 (7th Cir.1978); *Caswell v. Califano,* 583 F.2d 9, 14 (1st Cir.1978). Under these decisions, judicial waiver of complete administrative exhaustion is appropriate when plaintiffs' legal claims are collateral to the demand for benefits, and plaintiffs' interest in prompt judicial review is so great that deference to the agency's judgment is inappropriate. *Mathews v. Eldridge,* 424 U.S. at 328–30, 96 S.Ct. at 899–900; *Giancone v. Schweiker,* 656 F.2d at 1243–44; *Wright v. Califano,* 587 F.2d at 349; *Caswell v. Califano,* 583 F.2d at 14–15. Judicial waiver of complete administrative exhaustion is also appropriate when the Secretary's position on the policies being challenged is fixed (i.e., the Secretary cannot change it) or is final (i.e., the Secretary is unlikely to change it). *Liberty Alliance For The Blind v. Califano,* 568 F.2d 333, 345–46 (3rd Cir.1977).

Secretary's final determinations under section 405 of this title; except that the determination of the Secretary after such hearing as to any fact shall be final and conclusive and not subject to review by any court.

**5.** The Secretary had challenged plaintiffs' class, as *originally* defined, under both prongs of § 405(g). She claimed that not only had many members of the class failed to receive final hearings on their claims, they had never properly filed claims for benefits in the first place. The Secretary relied on a recent opinion by Justice Rehnquist, sitting as Circuit Justice, *Heckler v. Lopez,* —— U.S. ——, 104 S.Ct. 10, 77 L.Ed.2d 1431 (1983) (Rehnquist, Circuit Justice) *petition for rehearing en banc pending.* Justice Rehnquist suggested that, when bene-

fits had been *terminated,* as opposed to initially denied, a claimant's initial application for benefits was not enough to establish a "claim" for purposes of § 405(g). Rather, a claimant must have also filed a claim or application for *continued* benefits. The policy in the Seventh Circuit has been that the initial application for benefits meets the jurisdictional criteria in either case. *See, e.g., Wright v. Califano,* 603 F.2d 666, 668–70 (7th Cir.1979). In response to the Secretary's argument, plaintiffs amended the definition of their class. This Court holds that the definition, as amended, conforms both to the policy in the Seventh Circuit and the more stringent policy enunciated by Justice Rehnquist. Hence, the Secretary's challenge under the first prong of § 405(g) is rendered moot.

■ While plaintiffs need meet only one of these tests for judicial review of the exhaustion requirement, in the instant case this Court finds that they meet both. First, plaintiffs challenge the validity of two policies of the Secretary on the basis that they violate the Social Security statute and the Fifth Amendment. The plaintiffs' claims, if successful, will not result in the payment of benefits to class members; rather, the result will be a change in the Secretary's policies and procedures in evaluating a disability claim. As such, the issue presented is collateral to claims for benefits. Moreover, plaintiffs' interest in prompt judicial review is substantial. All of the class members are applicants for or recipients of disability benefits. These persons are not working, but are on fixed incomes with many of them dependent upon their benefits or public assistance as their sole source of income. An erroneous termination or denial of disability benefits to such persons places substantial financial and nonfinancial burdens on them. "[I]t is simply not true that a claimant for disability benefits, not infrequently in dire financial circumstances due to his disability, is truly made whole by retroactive payments which he has had to survive perhaps well over a year without." *Caswell v. Califano,* 583 F.2d at 14.

Second, because the Secretary's position appears to be final on the challenged policies, exhaustion of administrative remedies would be futile. The experience of the two named plaintiffs, who did exhaust, illustrates the futility of exhaustion—the Secretary's published policies are not likely to be influenced or changed by the administrative appeals of any single individual; thus the issue is unsuited to resolution in the hearing process. *Liberty Alliance For The Blind v. Schweiker,* 568 F.2d at 345–6. That the challenged policies are published both in the federal regulations and in Social Security Rulings further suggests the final nature of the Secretary's position. Finally, the validity of the policies challenged here has been raised in other litigation giving the Secretary ample opportunity to reconsider, and she has not done so. *E.g., Chico v. Heckler,* 710 F.2d 947 (2d Cir.1983); *Scruggs v. Schweiker,* 559 F.Supp. 100 (D.Tenn.1982).

For all the aforementioned reasons, this Court hereby waives the final hearing requirement under § 405(g), and assumes jurisdiction over the unnamed members of plaintiffs' proposed class. Because the class proposed by plaintiffs contains by definition individuals over whom this Court has jurisdiction under § 405(g), the Secretary's challenge to the numerosity of the class must fail.

### B. *Common Questions of Law and Fact*

The Secretary also claims that the common question of law raised by plaintiffs is too intertwined with the subordinate factual circumstances of each class member to be separated out for purposes of class certification. The Secretary appears to have misread plaintiffs' complaint, however. What plaintiffs are seeking is this Court's ruling on the validity of two administrative policies for determining eligibility for benefits, not an adjudication as to whether individual class members are entitled to benefits thereunder. Hence, the class as defined by plaintiffs meets the legal-factual commonality requirement.

### C. *Typicality of Claims*

■ "The typicality requirement refers to the nature of the representative's claim or defense and not to the specific facts from which it arose or to the relief sought." *Long v. Thornton Tp. High School District 205,* 82 F.R.D. 186, 190 (N.D.Ill.1979). The test is whether the named plaintiffs' claim and that asserted on behalf of the class are "based on the same legal theory." *Id.* at 190. In this case plaintiffs challenge the Secretary's denial of benefits solely because of the application of the regulatory policies at issue here. The legal theory on behalf of the class is identical.

### D. *Representativeness of Named Plaintiffs*

"Adequacy of representation depends on two factors: (a) the plaintiffs' attorney must be qualified, experienced and generally able to conduct the proposed litigation;

and (b) the plaintiff must not have interests antagonistic to those of the class." *Susman v. Lincoln American Corp.*, 561 F.2d 86, 90 (7th Cir.1977). In this case, plaintiffs' attorneys have repeatedly been found to be adequate class counsel. *See, e.g., Wright v. Califano*, 587 F.2d 345 (7th Cir.1978); *Jimenez v. Weinberger*, 523 F.2d 689 (7th Cir. 1975). As to the second factor under Fed.R. Civ.P. 23(a)(4), the named plaintiffs have instituted this litigation to declare the Secretary's regulatory policies illegal and to enjoin their application. If the prayed for relief is granted, both the named and unnamed plaintiffs will benefit equally. The Secretary does not allege, nor does this Court find, any facts suggesting that plaintiffs' interest in the case is inconsistent with the interests of the class as a whole.

II. *Requisites Under Fed.R.Civ.P. 23(a)*

In addition to meeting the requirements of Fed.R.Civ.P. 23(a), a class action must qualify under one of the subsections of 23(b). The Secretary's regulatory policies challenged here affect equally all members of the class. Indeed, plaintiffs have defined the class by reference to the scope of the Secretary's policies at issue.

Thus, there is ample support for plaintiffs' assertion that the Secretary has acted or refused to act on grounds generally applicable to the class, thereby making injunctive or declaratory relief with respect to the class as a whole appropriate. *Alliance to End Repression v. Rochford*, 565 F.2d 975, 978 (7th Cir.1977); *Dixon v. Quern*, 76 F.R.D. 617, 620 (N.D.Ill.1977).

*Conclusion*

Plaintiffs have met their four-part burden under Fed.R.Civ.P. 23(a) for certification of a class action. The objections raised by defendant to numerosity and commonality of issues have been considered and rejected in the foregoing discussion. The remaining two prerequisites of 23(a), typicality of claims and representativeness of named plaintiffs have also been met. Furthermore, the requirements of Fed.R.Civ.P. 23(b)(2) are satisfied in that the Secretary's two eligibility policies are generally applica-

ble to the proposed class, making appropriate injunctive and declaratory relief with respect to the class as a whole. Therefore, plaintiffs' motion for class certification is granted.

IT IS SO ORDERED.