Esther MARCUS, Michelle W., by her next friend Marie W., Larry Rhyne, and Consuelo Allen, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Margaret HECKLER, Secretary of the Department of Health and Human Services, Defendant.

No. 85 C 453.

United States District Court, N.D. Illinois, E.D.

Oct. 21, 1985.

Helen Cropper, Joseph A. Antolin, John M. Bouman, Mary Elizabeth Kopko, Martha L. Tonn, Legal Assistance Foundation of Chicago, Chicago, Ill., for plaintiffs.

Mary S. Rigdon, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiffs challenge step three in the five-step sequential evaluation process the Secretary of Health and Human Services (Secretary) has established for evaluating claims for disability benefits under the Old Age, Survivors and Disability Insurance (OASDI or Title II) program and the Supplemental Security Income (SSI or Title XVI) program of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* and 1381 *et seq.*

According to regulations promulgated by the Secretary, the first three steps of the five-step process are:

[Step 1] ... If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and work experience.

[Step 2] ... If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience. However, it is possible for you to have a period of disability for a time in the past even though you do not have a severe impairment.

[Step 3] ... If you have an impairment(s) which meets the duration requirement and is listed in Appendix 1 *or is equal to a listed impairment(s)*, we will find you disabled without considering your age, education, and work experience.

20 C.F.R. §§ 404.1520(b)–(d), 416.920(b)–(d) (1984) (emphasis added).[1] Plaintiffs claim that the Secretary is failing to make "medical equivalence findings" as required by these regulations.[2]

1. The sequential evaluation process ends at step three for claimants for disabled widow(ers) or surviving divorced spouse benefits, 20 C.F.R. § 404.1578 (1984), and for SSI disabled children's benefits, 20 C.F.R. § 416.923 (1984).

2. Plaintiffs claim that Social Security Ruling 83–19, Program's Operations Manual Systems §§ 00401.415 B and C, and 00401.570 C also require medical equivalence findings.

Plaintiffs assert that in order to make these findings the Secretary must
(a) consider whether a claimant's impairment(s) is medically equivalent to the listings;
(b) require separate written findings regarding medical equivalence by the state agency adjudicators, the ALJs and Appeals Council members;

(c) designate a physician to examine a claimant in order to make the medical assessments of medical equivalence;
(d) require medical advisors to make separate written findings regarding medical equivalence;
(e) require that the administrative record contain all medical equivalence assessments;
(f) assess and consider [residual functional capacity] to determine medical equivalence ...;
(g) provide adequate training and instructions to assist SSA employees and agents in evaluating medical equivalence;
(h) evaluate the medical equivalence of combined impairments except as set forth in SASR 83.19 (1983), which limits such evaluation to the criteria of the listed impairment

The named plaintiffs filed claims under the various Social Security disability programs: adult SSI (Larry Rhyne); child's disability (Michelle W.); widow's disability (Consuelo Allen), and surviving divorced spouse (Esther Marcus). In each case the Secretary denied disability benefits. Plaintiffs invoke the court's jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3) and under 28 U.S.C. § 1361.

## I.

Presently before the court is plaintiffs' motion for class certification under Federal Rules of Civil Procedure 23(a) and (b)(2). The class is defined as

All persons who [reside] or have resided in Illinois:

(a) who have claimed or are claiming initial or continued disabled widow(er)s', disabled surviving spouse's, disabled child's, or disabled workers' benefits under the Old Age, Survivors, and Disability Insurance Benefits program and/or disability benefits under the Supplemental Security Income program of the Social Security Act; and

(b) whose claim for such benefits was or is being evaluated under the Department of Health and Human Services' (HHS) Secretary's sequential evaluation of disability, 20 C.F.R. §§ 404.1520 and 416.920; and

(c) whose claims were or are denied initially or on any administrative appeal by a decision on or after November 19, 1984; and

(d) whose claims were or are denied by a decision of "not disabled" made at or after the third step of this sequential evaluation, 20 C.F.R. §§ 404.1520(d–f), 416.920(d–f), and Part 404, Subpart P, Appendix 1.

The Secretary contests class certification on jurisdictional and procedural grounds. She claims the court lacks subject matter jurisdiction over the class because (1) class

members have not exhausted their administrative remedies as required by 42 U.S.C. § 405(g); (2) class members have failed to seek judicial review of a final administrative decision within 60 days, as required by 42 U.S.C. § 405(g); and (3) mandamus jurisdiction under 28 U.S.C. § 1361 is not available to the class because 42 U.S.C. § 405(g) is the exclusive basis for jurisdiction over cases arising under the Social Security Act. Procedurally, the Secretary claims that the class does not meet the requirements of Fed.R.Civ.P. 23. We will address each of the defendant's arguments in turn.

## II.

42 U.S.C. § 405(g) provides in relevant part:

Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within 60 days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. . . .

### A. The Exhaustion Requirement

■ The Supreme Court has interpreted the second phrase of section 405(g) to require that plaintiff file a claim for benefits and that the Secretary make a final decision on that claim. Although the Court has referred to the whole section as jurisdictional, *Califano v. Yamasaki,* 442 U.S. 682, 703, 99 S.Ct. 2545, 2558, 61 L.Ed.2d 176 (1979), the Court has also held that the filing requirement is non-waivable [3] while the finality or exhaustion requirement is waivable by the Secretary or the courts. *Heckler v. Ringer,* 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984); *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Three factors are used

---

closest to the claimant's most severe impairment;

(i) evaluate symptoms such as pain in assessing medical equivalence; and

(j) consider substitute test results or medical signs and findings.

**3.** The class is defined so that all its members meet this first requirement.

to determine whether to waive the exhaustion requirement: the collateral nature of the suit to a claim for benefits, the futility of pursuing administrative remedies, and the harm plaintiffs will suffer pending exhaustion.[4] *Johnson v. Heckler,* 769 F.2d 1202 (7th Cir.1985); *City of New York v. Heckler,* 742 F.2d 729 (2d Cir.1984). No one factor is crucial; rather, a pragmatic combination of all three is necessary to determine if the requirement should be waived. *City of New York,* 742 F.2d at 736; *Mental Health Association of Minnesota v. Heckler,* 720 F.2d 965 (8th Cir. 1983).

The parameters of the collateral claim test are set by *Eldridge* and *Ringer.* In *Eldridge,* the Court considered a due process challenge to the Secretary's policy of providing a post-termination hearing to disability recipients. The Court held that "Eldridge's constitutional challenge is entirely collateral to his substantive claim of entitlement," making deference to the agency's determination unnecessary. *Eldridge,* 424 U.S. at 330, 96 S.Ct. at 900. In *Ringer,* plaintiffs challenged the Secretary's ruling that she would not reimburse expenses for bilateral carotid body resection surgery. The Court held that "it makes no sense to construe the claims of ... respondents as anything more than, at bottom, a claim that they should be paid for their BCBR surgery" because if they prevailed in court "only essentially ministerial details will remain before respondents would receive reimbursement." *Ringer,* 104 S.Ct. at 2021–22. The Court also noted that "whatever constitutional claims respondents assert are clearly too insubstantial to support subject matter jurisdiction." *Id.* at 2018, n. 4.

The present case does not fall squarely within either *Eldridge* or *Ringer.* However, plaintiffs' claims here are significantly closer to the former than the latter. Plaintiffs challenge a procedure rather than substantive standards of eligibility; the redress they seek will not necessarily result in the payment of benefits. *John-*

son, *supra,* 769 F.2d at 1208; *City of New York,* 742 F.2d at 737. *See also Polaski v. Heckler,* 751 F.2d 943, 954 (8th Cir.1985). As was true in *Johnson,* "far more than mere 'ministerial details' [will] have to be adjudicated before the plaintiffs [can] be awarded benefits." *Id.* at 1208. Given the posture of this case, the court holds that the plaintiffs' claims are sufficiently collateral to their entitlement to benefits to justify waiver.

Exhaustion would also be futile. Plaintiffs claim that the Secretary has taken a final position on the issue of "medical equivalence findings" by excluding this step from each class member's disability determination proceeding. The Secretary does not refute this claim. Here, as in *Eldridge,*

> it is unrealistic to expect that the Secretary would consider substantial changes in the current administrative review system at the behest of a single aid recipient raising a constitutional challenge in an adjudicatory context.

*Id.* 424 U.S. at 330, 96 S.Ct. at 900. Under these circumstances plaintiffs need not exhaust their administrative remedies. *See Johnson,* 769 F.2d at 1208; *Polaski,* 751 F.2d at 953 (deference to Secretary unnecessary when "no further elaboration of agency policy is likely"). As the court said in *City of New York,* further exhaustion is futile because plaintiffs claim "a procedural right, guaranteed by the Secretary's regulations, [which] cannot be vindicated by an ultimate determination of eligibility." 742 F.2d at 737; *see also Read v. Heckler,* 756 F.2d at 784. In this sense, the present case differs significantly from *Ringer,* where the Court found that exhaustion was not futile because the plaintiffs' claims could be vindicated through the administrative process. 104 S.Ct. at 2023–24.

Lastly, plaintiffs here complain of a harm that cannot be remedied by retroactive payment of benefits. The injury they claim is fundamentally one of due process which no amount of money given on an

---

4. The following analysis of the exhaustion requirement applies to plaintiffs' constitutional and statutory claims. *See Reed v. Heckler,* 756 F.2d 779 (10th Cir.1985).

individual basis can correct. In this circumstance, plaintiffs have shown sufficient harm to waive the exhaustion requirement. *See Ringer,* 104 S.Ct. at 2023; *Mental Health Association of Minnesota,* 720 F.2d at 971.

**B. Sixty-Day Limitation**

42 U.S.C. § 405(g) allows for judicial review of the Secretary's final decision if a complaint is filed within 60 days of the decision. Defendant argues that this provision is jurisdictional and therefore a non-waivable bar against hearing claims of class members who have failed to file in a timely fashion.

The Supreme Court has vacillated between viewing the 60-day limitation as an absolute jurisdictional bar and viewing it as a waivable statute of limitations. *Compare Heckler v. Lopez,* 464 U.S. 879, 104 S.Ct. 221, 78 L.Ed.2d 217 (1983) (memorandum opinion denying application to vacate a stay) (Stevens, J., dissenting in part); *Califano v. Yamasaki,* 442 U.S. 682, 703–04, 99 S.Ct. 2545, 2558–59, 61 L.Ed.2d 176 (1979), *with Mathews v. Eldridge,* 424 U.S. 319, 328 n. 9, 96 S.Ct. 893, 899 n. 9, 47 L.Ed.2d 18 (1976); *Weinberger v. Salfi,* 422 U.S. 749, 763–64, 95 S.Ct. 2457, 2465–66, 45 L.Ed.2d 522 (1975). However, in none of these cases did the Supreme Court address the issue specifically. In the meantime, the Seventh Circuit has recently stated, admittedly in dicta, that it follows the *Salfi* decision. *Johnson,* 769 F.2d at 1209; *see also Wilson v. Edelman,* 542 F.2d 1260, 1274 (7th Cir.1976).

The Senate Finance Committee recently addressed the issue in its Report on the Social Security Disability Benefits Reform Act of 1984 (Reform Act), stating that "[since 42 U.S.C. § 405(g) ] is an authorization to sue the United States, its 60-day time limit for filing suit is jurisdictional and cannot be tolled by the pendency of a class suit." S.Rep. No. 466, 98th Cong., 2d Sess. 17 (1984). The Secretary argues that this statement clearly establishes congressional intent on the 60-day provision. However, the statement is made in the context of a discussion of one particular amendment to the Act which sets out new standards for "continued eligibility" cases. These cases are closer to the type addressed in *Heckler v. Ringer,* as the Committee itself implies by citing the case with approval on the issue of exhaustion, than to the kind of case presently before the court. Other language in the Senate Report supports a narrow reading of its language. The Committee seemed to be concerned solely with the financial cost of allowing potentially thousands of individuals to join class actions to challenge the Secretary's determination of continued eligibility even though they have not exhausted their administrative remedies or filed suit in federal court within 60 days of an adverse final determination. As the Report states, "[t]he Committee cannot justify [a $1–2 billion] drain on the Trust Fund for the benefit of a group of individuals who had, but chose not to exercise, opportunities for appeal." S.Rep. No. 466, 98th Cong.; 2d Sess. 17 (1984). Given the narrowness of the Senate Finance Committee's concern, and the mixed signals from the Supreme Court, this court is reluctant to go against established Seventh Circuit law to hold the 60-day limitation as anything other than a statute of limitations which can be waived or tolled.

While the Secretary argues that the 60-day requirement is not waivable, plaintiffs correctly point out that *tolling,* not *waiver,* is the issue in this case. The general rule is that filing of a class action complaint tolls the statute of limitations for all members of the putative class pending class certification. *See Crown, Cork, & Seal Co., Inc. v. Parker,* 462 U.S. 345, 349, 103 S.Ct. 2392, 2395, 76 L.Ed.2d 628 (1983) (Title VII suit); *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 543–45, 553, 94 S.Ct. 756, 760–62, 38 L.Ed.2d 713 (1974) (antitrust suit); *Williams v. Owens-Illinois, Inc.,* 665 F.2d 918 (9th Cir. 1982) (Title VII case); *Wright v. Califano,* 603 F.2d 666, 669, and n. 7 and 8 (7th Cir.1979) (Social Security case); *Jimenez v. Weinberger,* 523 F.2d 689, 696 (7th Cir.

1975) (Social Security case). The Court in *Crown, Cork* explained that the rule furthers the purpose behind class actions, the "promotion of efficiency and economy of litigation." 462 U.S. at 349, 103 S.Ct. at 2395. This purpose is most apparent in a case such as the present one, where a single ruling on the legality of the Secretary's procedures is appropriate and will save the courts from repeatedly considering the identical legal issue. The class is limited to those persons denied benefits on or after November 19, 1984, 60 days prior to the filing of the original complaint.[5] The court holds that the statute of limitations is tolled for the putative class members. *See Polaski v. Heckler,* 751 F.2d at 953; *City of New York,* 742 F.2d at 738.

As a result of the above analysis of the exhaustion requirement and the 60-day limitation, the court concludes that it has jurisdiction over the class based on 42 U.S.C. § 405(g). Although this means we do not have to reach the issue of whether mandamus jurisdiction also lies in this case, we note that several circuits have held that mandamus jurisdiction is not foreclosed by the Social Security Act's jurisdictional sections. *See e.g., Dietsch v. Schweiker,* 700 F.2d 865, 867–68 (2d Cir.1983); *Mental Health Association of Minnesota,* 720 F.2d at 968–69 and n. 17; *Leschnoik v. Heckler,* 713 F.2d 520, 522 (9th Cir.1983); *Ellis v. Blum,* 643 F.2d 68, 78–82 (2d Cir.1981); *cf. Americana Healthcare Corp. v. Schweiker,* 688 F.2d 1072, 1084 (7th Cir.1982) (implying mandamus will lie in the appropriate circumstances).

### III.

■ Having stepped through the maze of jurisdictional issues raised by the Secretary, we now turn to her procedural objections. She claims that the class fails to meet the requirements of Fed.R.Civ.P. 23. The court, however, finds that the claims plaintiffs raise are particularly well suited to a class action and that Rule 23's requirements are easily met.

### Numerosity

Plaintiffs estimate the class numbers 11,000 as of April 1, 1985. The Secretary argues that this estimate is too high because it includes those with claims to continued benefits whose cases will automatically be remanded for administrative review under the Reform Act. While this may indeed occur, the class is still sufficiently numerous to meet the requirement of Rule 23(a)(1). *See Johnson v. Heckler,* 100 F.R.D. 70, 72 (N.D.Ill.1983); *Long v. Thornton Township High School District,* 82 F.R.D. 186, 189 (N.D.Ill.1979).

### Common Question of Law and Fact

Plaintiffs' claim that the Secretary has failed to make medical equivalence findings uniformly affects all members of the class even though some class members are evaluated and rejected at step four or five of the evaluation process. Plaintiffs do not, as the Secretary contends, seek a determination of each individual's eligibility for benefits. Thus, the class has met the requirement of Rule 23(a)(2). *Johnson,* 100 F.R.D. at 74; *Dixon v. Quern,* 76 F.R.D. 617, 620 (N.D.Ill.1977).

### Typicality

The typicality test is "whether the named plaintiffs claim and that asserted on behalf of the class are 'based on the same legal theory.'" *Johnson,* 100 F.R.D. at 74. Plaintiffs' claims clearly meet this test because they are based on a procedural challenge to the Secretary's interpretation of her regulations. *See Quern,* 76 F.R.D. at 620.

### Adequacy of Representation

"Adequacy of representation depends on two factors: (a) the plaintiffs' attorneys must be qualified, experienced and generally able to conduct the proposed litigation; and (b) the plaintiff must not have interests antagonistic to those of the class." *John-*

---

5. The complaint has been amended twice to add named plaintiffs, but the class allegations have remained the same and therefore relate back to the filing of the original complaint under Fed.R. Civ.P. 15(c). *Cf. Paskuly v. Marshall Field and Co.,* 646 F.2d 1210 (7th Cir.1981) (Title VII case).

*son,* 100 F.R.D. at 74–75. Plaintiffs' attorneys are experts in class actions and Social Security law, and have been found adequate class counsel in this circuit many times. *See e.g., Wright v. California,* 587 F.2d 345 (7th Cir.1978); *Jimenez v. Weinberger,* 523 F.2d 689 (N.D.Ill.1977); *Custom v. Trainor,* 74 F.R.D. 409 (N.D.Ill. 1977). The second factor is also met because the class members have the same interest in ensuring that the Secretary make medical equivalence findings at step three of her evaluation process. Thus, Rule 23(a)(4)'s requirements are met.

Lastly, the class meets the requirements of Rule 23(b) that the Secretary act on grounds generally applicable to the class, thereby making injunctive or declaratory relief with respect to the class as a whole appropriate. In fact, as the plaintiffs point out, the class itself is defined by reference to the scope of the defendant's policies at issue, so that relief will affect all members of the class equally and only those members. *Johnson,* 100 F.R.D. at 75; *see also* Advisory Board Committee Note to Fed.R. Civ.P. 23, 39 F.R.D. 69, 102.

## CONCLUSION

For all the foregoing reasons, the court grants plaintiffs' motion for class certification for the class as presently defined.