**HOMEWOOD PROFESSIONAL CARE CENTER, LTD., Plaintiff-Appellant,**

v.

**Margaret A. HECKLER, in her official capacity as Secretary of the United States Department of Health and Human Services, Certain Unknown Officials and Agents of the United States Department of Health and Human Services, in their official and individual capacities, and Jerome Howard, Defendants-Appellees.**

No. 83–3301.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 4, 1984.

Decided June 12, 1985.

As Amended Aug. 12, 1985.

David E. Bennett, Chadwell & Kayser, Ltd., Chicago, Ill., for plaintiff-appellant.

Thomas P. Walsh, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for defendants-appellees.

Before CUDAHY, COFFEY and FLAUM, Circuit Judges.

COFFEY, Circuit Judge.

The plaintiff, Homewood Professional Care Center, Ltd. ("Homewood"), operated a nursing home as a participant in the Medicare program from 1975 through 1977.

After Homewood voluntarily withdrew from the Medicare program, it submitted reimbursement claims to the Department of Health and Human Services for services provided to Medicare recipients during two separate accounting periods. While the claims were pending before a review board within the Department of Health and Human Services, Homewood filed a separate suit for declaratory judgment, mandamus, injunctive relief and damages in Federal court. The district court dismissed Homewood's complaint for lack of subject matter jurisdiction. We affirm.

## I.

According to the allegations in the complaint, Homewood operated a nursing home as a provider of services under the Medicare program from April 1975 through August 1977.[1] This appeal concerns two of Homewood's purportedly timely and proper cost reports that Homewood submitted to a fiscal intermediary.[2] Payment for Medicare services are made directly to the hospital or other "provider" of the services. Rather than having to reimburse the provider for Medicare services on a claim-by-claim basis, the intermediary advances payments to the provider to cover the estimated cost of all services furnished to Medicare beneficiaries during a specific accounting period. At the end of the accounting period, after the provider has submitted a "cost report" establishing that its total audited costs are allocated properly between Medicare and non-Medicare patients in accordance with the Secretary's rules and regulations, a final settlement of the actual amount due for all such services is made. 42 U.S.C. § 1395g(a); 42 C.F.R. 405.403, 405.405, 405.414 *et seq.* The cost reports

submitted by Homewood to the intermediary were for payment of services not covered in the interim payments previously received. In its first cost report, Homewood claimed $373,059 as underpayments during the fiscal year of April 1, 1976 through March 31, 1977. After auditing the first cost report, the intermediary found that Homewood was due $67,800. The second cost report submitted by Homewood to the intermediary covered the period from April 1, 1977 through August 31, 1977, the date on which Homewood voluntarily terminated its participation in the Medicare program. Homewood claimed that it was entitled to $274,420 for the Medicare services provided during this period.

On May 17, 1979, defendant Jerome Howard, a disgruntled part-owner of Homewood, informed the Secretary and the intermediary that the cost reports submitted by Homewood contained gross misrepresentations and might very well be fraudulent. Based upon this information, the intermediary suspended settlement negotiations with Homewood pursuant to 42 C.F.R. § 405.371(b). This section of the Code of Federal Regulations provides for the suspension of payments when the intermediary has reliable evidence that the payments to be made may not be correct and the circumstances giving rise to the need for a suspension involve possible fraud or willful misrepresentation. During the audit of Homewood's records supporting the second cost report, a dispute arose between the intermediary and Homewood as to whether Homewood was, in fact, in a position to substantiate its claim for the $274,420. On August 3, 1981, the intermediary advised Homewood that the suspension

1. Part A of the Medicare Act, 42 U.S.C. § 1395 *et seq.* insures the aged and disabled for the reasonable cost of hospital and related post-hospital services, including nursing home care at "skilled nursing facilities." 42 U.S.C. §§ 1395c, 1395d, 1395x(h) and (j).

2. A fiscal intermediary is an entity that has contracted with the Secretary to determine for the Secretary whether services provided by the hospital are covered under the Medicare Act and the amount due the provider of services.

42 U.S.C. § 1395h; 42 C.F.R. § 421.3. "The intermediary must assure that it makes payments only for services that are: (1) Furnished to Medicare beneficiaries; (2) Covered under Medicare part A or part B; and (3) Medically necessary. When a Professional Standards Review Organization (PSRO) has assumed review responsibility ..., the PSRO shall make final determinations of medical necessity which are binding for purposes of payment." 42 C.F.R. § 421.100(a).

was withdrawn after a review as the audits failed to uncover fraud or intentional misrepresentation. Some three weeks later, on August 24, 1981, the intermediary notified Homewood that because it had not provided the intermediary with sufficient financial records to substantiate the second cost report's claim for $274,420, it was classifying the entire $234,183 interim payments made by the Department during the second cost period to be overpayments. The intermediary further notified Homewood that it had reexamined the first cost report and was now of the opinion that Homewood was entitled to $79,430 rather than the $67,800 previously certified for payment. The intermediary applied the $79,430 underpayment from the first cost report to the $234,183 deemed overpayment from the second cost report, thus reducing the amount Homewood now owed the Medicare program to $154,753, rather than the $234,183 previously determined. Homewood appealed the intermediary's determination of the underpayment on the first cost report and the overpayment on the second cost report to the Provider Reimbursement Review Board (hereinafter "Board").

The Provider Reimbursement Review Board, whose primary responsibility is to resolve accounting disputes, *see* H.Rep. No. 92–231, 92nd Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Ad.News 4989, 5094, reviews disputes between providers and intermediaries if the amount in controversy is greater than $10,000. 42 U.S.C. § 1395oo (a); 42 C.F.R. § 405.1835. In addition, the provider may likewise request a hearing before the Board if the claim is in excess of $10,000 and the intermediary fails to make a final determination as to the amount the provider should be reimbursed for providing goods and services to Medicare patients on a timely basis provided that the delay "was not occasioned by the fault of the provider." 42 C.F.R. § 405.1835(c); 42 U.S.C. § 1395oo (a)(1)(B), (C). A provider dissatisfied with the final decision of the Board may obtain judicial review of its decision with the filing of a civil action in Federal district court within

60 days of the Secretary's final decision. 42 U.S.C. § 1395oo (f)(1).

While its appeal was pending before the Board, Homewood filed suit in the Federal district court for the Northern District of Illinois seeking a declaratory judgment, a writ of mandamus, injunctive relief, and damages as a result of the "wrongful conduct of the defendants ... acting individually and in concert ... which resulted in a deprivation of Homewood's property without due process of law." Specifically, Homewood points to five violations of its due process rights:

"a. Wrongful suspension of all audit and settlement activities concerning Homewood without proper cause;

"b. Failure to grant Homewood at least a post-suspension hearing as required by the Medicare Act, 42 U.S.C. § 1395y(d)(3);

"c. Failure by the Secretary to issue regulations requiring a post-suspension hearing in cases where a suspension is imposed on the grounds of alleged fraud and misrepresentation as required by the Medicare Act, 42 U.S.C. § 1395y(d)(3);

"d. Wrongfully refusing to process properly Homewood's cost report for the period ending August 31, 1977 [second cost report]; and

"e. Continuing to withhold funds due to Homewood for services previously rendered to Medicare beneficiaries without just cause."

Homewood alleged in the motion for declaratory judgment "that the actions of the defendants ... are violative of plaintiff's rights under the United States Constitution and the statutes and regulations which [sic] make up the Medicare Program." Homewood requested that the court "declare that plaintiff has no adequate administrative remedy." Further, Homewood requested a "Writ of Mandamus compelling defendant [Secretary] to pay to plaintiff those sums owed to plaintiff for services provided under the Medicare Program." In addition, Homewood sought as compensatory damages "those sums claimed by

plaintiff as due and owing for services provided under the Medicare Program." Finally, Homewood claimed $1,000,000 "as punitive damages suffered as a result of the bad faith, malicious and unauthorized conduct of the defendants."

The defendants filed a motion to dismiss Homewood's complaint, arguing that the district court lacked subject matter jurisdiction because the Secretary had not as of that date issued a final decision pursuant to 42 U.S.C. § 405(h) as incorporated in the Medicare Act by § 1395 and § 1395*oo* (f)(1). The district court granted the defendants' motion to dismiss on the basis that the "plaintiff has not satisfied the requirements of 42 U.S.C. § 405(h) which requires that 'no findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided.' Plaintiff has not found any basis for circumventing this provision which, under § 1395*oo* requires the administrative review [of the payment dispute by the Board]." The district court further ruled that Homewood was not entitled to mandamus relief because it failed to demonstrate "a plainly defined and peremptory duty on the part of the defendant to do the act in question" and because it had an adequate remedy in the United States Court of Claims. On appeal, Homewood contends that the Federal district court has subject matter jurisdiction under 28 U.S.C. § 1331, 42 U.S.C. § 1395y(d), 28 U.S.C. § 1361 and 42 U.S.C. § 1395*oo*.

## II.

A. 28 U.S.C. § 1331—FEDERAL QUESTION JURISDICTION.

Homewood advances two grounds in support of federal question jurisdiction; a procedural due process theory and a constitutional tort theory. Homewood initially contends that the Secretary "denied Homewood due process of law by issuing regulations which do not provide for a hearing in the case of a suspension for fraud or willful misrepresentation, by denying it at least a post-suspension hearing on the suspension issue, and by failing to reach a final resolution regarding its [second cost report]." Homewood next contends that "[c]ertain unknown federal officials and agents in their individual capacities" committed a "constitutional tort" in depriving Homewood of property without due process of law. Homewood claims that the gravamen of its procedural due process claim arises under the Constitution rather than the Medicare Act. Homewood further claims that its constitutional tort theory is based upon the fact that a district court has subject matter jurisdiction under 28 U.S.C. § 1331 to entertain an action for damages against a federal official for a violation of due process rights guaranteed by the Fifth Amendment. *Davis v. Passman*, 442 U.S. 228, 236, 99 S.Ct. 2264, 2272, 60 L.Ed.2d 846 (1979). According to Homewood, a constitutional tort remedy exists unless the "defendants demonstrate 'special factors counseling hesitation in the absence of affirmative action by Congress'" such as whether the defendants "enjoy such independent status in our constitutional scheme as to suggest that judicially created remedies against them might be inappropriate." *Carlson v. Green*, 446 U.S. 14, 18, 19, 100 S.Ct. 1468, 1471, 1472, 64 L.Ed.2d 15 (1980). An additional limitation on the existence of the constitutional tort remedy is a showing "that Congress has provided an alternative remedy which it explictly declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective." *Id.* at 18–19, 100 S.Ct. at 1471–1472. Homewood argues that the agents of the Department of Health and Human Services are "members of the executive branch and do not enjoy such independent status in our constitutional scheme as to suggest that judicially created remedies against them might be inappropriate." Homewood also argues that there exists no explicit congressional declaration that if a federal agent administering the Medicare program violates a person's Fifth Amendment rights, the injured person must present his claim to the Board before seeking relief in the district court. Homewood further contends that a Board

review does not provide a remedy equally effective to the constitutional tort remedy because the Board cannot award punitive damages and lacks authority to determine constitutional claims. Homewood concludes that because the Board cannot provide the relief sought and was not explicitly designated by Congress as a substitute for the constitutional tort remedy, the constitutional tort remedy is available in federal district court prior to the Board's final decision on the merits.

Title 42 U.S.C. § 405(h) of the Social Security Act, made applicable to the Medicare Act by 42 U.S.C. § 1395ii, provides:

"The findings and decision[s] of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter."

In *Weinberger v. Salfi*, 422 U.S. 749, 757–58, 95 S.Ct. 2457, 2462–64, 45 L.Ed.2d 522 (1975), the Supreme Court held that § 405(h) "prevent[s] review of decisions of the Secretary save as provided in the Act, which provision is made in section 405(g). The latter section prescribes typical requirements for review of matters before an administrative agency, including administrative exhaustion." Specifically, "to be true to the language of the statute, the inquiry in determining whether § 405(h) bars federal question jurisdiction must be whether the claim 'arises under' the Act...." *Heckler v. Ringer,* —— U.S. ——, 104 S.Ct. 2013, 2022, 80 L.Ed.2d 622 (1984).

In *Salfi,* the Supreme Court interpreted section 405(h) to require exhaustion of administrative remedies as a condition precedent to obtaining federal question jurisdiction in actions seeking either to establish an entitlement to payments under the So-

cial Security Act or to remove a legal barrier to recovery of such payments. The plaintiffs in *Salfi* challenged the constitutionality of a benefit requirement and, like Homewood in the present case, sought a declaratory judgment that the Secretary's regulations were unconstitutional, injunctive relief prohibiting the Secretary from denying benefits, and the payment of benefits. The Court rejected the contention that the plaintiffs' action was not one to recover on a claim "arising under" the Social Security Act because it also arose under the Constitution. The Court specifically noted that the plaintiffs were seeking to recover Social Security benefits and the Social Security Act provided both the "standing and the substantive basis for the presentation of their constitutional contentions." 422 U.S. at 761, 95 S.Ct. at 2464. The Court concluded that the jurisdictional bar of section 405(h) "extends to any 'action' seeking 'to recover on any [Social Security] claim'—irrespective of whether resort to judicial processes is necessitated by discretionary decisions of the Secretary or by his nondiscretionary application of allegedly unconstitutional statutory restrictions." *Id.* at 762, 95 S.Ct. at 2465 (bracketed material in original). Addressing the constitutionality of requiring administrative review as a condition precedent to judicial review, the Court noted that:

"[T]he plain words of the third sentence of § 405(h) do not preclude constitutional challenges. They simply require that they be brought under jurisdictional grants contained in the Act, and thus in conformity with the same standards which are applicable to nonconstitutional claims arising under the Act. The result is not only of unquestionable constitutionality, but it is also manifestly reasonable, since it assures the Secretary the opportunity prior to constitutional litigation to ascertain, for example, that the particular claims involved are neither invalid for other reasons nor allowable under other provisions of the Social Security Act."

*Id.* at 762, 95 S.Ct. at 2465. Thus, the issue in the present case is whether section

405(h) bars federal question jurisdiction because Homewood, in effect, seeks to establish an entitlement to payments under the Medicare Act or to remove a legal barrier to recovery of such payments.

Homewood alleges that the Secretary denied it procedural due process by "failing to reach a final resolution regarding its [second cost report]." Specifically, Homewood complains of the intermediary's failure to make specific findings on whether items should be reimbursed or to specify why documentation was inadequate and its failure to hold a hearing on its refusal to process the second cost report or to advise Homewood of its right to a hearing. Homewood further alleges that "no administrative procedures exist which comport with the due process requirements of the Fifth Amendment to the United States Constitution, and, in fact, no such procedures exist which provide for the review of the defendants' wrongful conduct."

■ Homewood's argument completely overlooks 42 U.S.C. § 1395oo (1)(A)(i), which affords any provider the right to challenge and a hearing before the Board if they believe the amount determined as proper payment is inaccurate and the amount in controversy is greater than $10,-000. In the present case, the intermediary informed Homewood of the amount Homewood owed the Medicare program and of its right to appeal; thus, Homewood received a final determination from the intermediary, 42 C.F.R. § 405.1801(a)(1), and appealed the intermediary's final determination to the Board. Once Homewood's unique interpretation of the Medicare Act and regulations is corrected, it is evident that the only issue remaining is the amount of money, if any, Homewood is to be reimbursed under the Medicare program. Since the Medicare Act provides both the "standing and the substantive basis for the presentation of their constitutional contentions," *Salfi*, 422 U.S. at 761, 95 S.Ct. at 2464, we hold that Homewood's reimbursement claim arises under the Medicare Act and federal question jurisdiction is barred

by section 405(h) until Homewood receives a final decision by the Board.

■ Homewood also argues that the Secretary denied it procedural due process by failing to issue regulations providing for a hearing in the case of a suspension for fraud or willful misrepresentation and also in denying a post-suspension hearing. The allegation that the Secretary's actions were improper because she failed to provide a hearing before payments for past services were temporarily suspended after fraud or misrepresentation were properly suspected, questions the constitutionality of a temporary legal barrier to the recovery of payments due; therefore, since it arises under the Act, it must initially be presented to the Board. *Id.* at (e)(1). Since the Board has made no final determination to date of any of the plaintiff's procedural due process claims, we hold that the district court properly concluded that it was without subject matter jurisdiction pursuant to 42 U.S.C. § 405(h).

We now turn to the question of whether Homewood's constitutional tort claim against the "unknown federal officials and agents acting in their individual capacities" for punitive damages is barred by section 405(h). Essentially, Homewood alleges that the individual defendants "acted in bad faith, maliciously, beyond their authority and with intent to harass the plaintiff" when they wrongfully refused to process Homewood's cost reports properly, and continued to withhold funds allegedly due Homewood. The complaint additionally alleges that the individual defendants wrongfully disregarded subpoenas related to other litigation and that the Department of Health and Human Services frustrated Homewood's administrative remedies by wrongfully initiating a criminal investigation against Homewood and relying on the criminal investigation as a reason for withholding documents from Homewood. Section 405(h) specifies that "[n]o action against the United States, the Secretary, *or any officer or employee* thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under

this subchapter." (Emphasis added). Section 405(h) does not distinguish between actions brought against the Secretary of the Department of Health and Human Services and actions brought against officers or employees of that Department, such as "unknown federal officials and agents acting in their individual capacities." Thus, we conclude that the inquiry in determining whether section 405(h) bars federal question jurisdiction in actions alleging a constitutional tort by officers and employees of the Department who administer the Medicare program must be whether the action "arises under" the Act.

■ Homewood's claim that the individual defendants wrongfully continue to withhold funds due them is, in effect, a claim for payment under the Act. Because the Secretary has not made a final determination, under the Supreme Court's reasoning in *Salfi*, Homewood's claim we have held herein is barred by section 405(h). Homewood's claim that the individual defendants wrongfully suspended audit and settlement activities concerning Homewood, failed to grant Homewood a post-suspension hearing, and wrongfully refused to process Homewood's second cost report are attempts to expedite recovery of payments under the Act. Because attempts to expedite recovery under the Act arise under the Act, these claims are barred from the federal courts under § 405(h) until the plaintiff receives a final determination from the Secretary. Homewood's allegations that the individual defendants frustrated its administrative remedy with the withholding of documents, is nothing more than a thinly veiled attempt to dispute the discovery procedures in this case. Indeed, 42 C.F.R. § 405.1853(b) provides that:

"(b) Prehearing discovery shall be permitted upon timely request of a party. To be timely, a request for discovery and inspection shall be made before the beginning of the hearing. A reasonable time for inspection and reproduction of documents shall be provided by order of the Board. The Board's order on all discovery matters shall be final."

In addition, 42 C.F.R. § 405.1857 provides in pertinent part:

"When reasonably necessary for the full presentation of a case, the Board may, either upon its own motion or upon the request of a party, issue subpoenas for the attendance and testimony of witnesses and for the production of books, records, correspondence, papers, or other documents which are relevant and material to any matter in issue at the hearing."

The regulations of the Department of Health and Human Services concerning hearings before the Board clearly give the Board the same authority as courts of law to govern discovery in matters before it. We do not believe we should usurp the Department's authority and intercede in resolving such mundane matters as disputes over discovery procedures before the Board and thus refuse to judicially mandate the same. Our conclusion that the plaintiff's constitutional tort claims arise under the Medicare Act is further illuminated by application of traditional tort principles. "The traditional, though no longer universal, tort rule is that punitive damages will not be awarded unless the plaintiff is awarded some compensatory damages." *Jones v. Reagan*, 696 F.2d 551, 554 (7th Cir.1983). "[T]ort damages cannot be awarded [to a plaintiff] if there is no injury." *Lossman v. Pekarske*, 707 F.2d 288, 291 (7th Cir.1983). Thus, in order for the plaintiff to recover punitive damages under its constitutional tort theory, the plaintiff must establish that it was actually injured by the alleged acts of withholding funds and documents and of allegedly refusing to process the second cost report. As a prerequisite in establishing an injury, the plaintiff must prove that its rights were violated, i.e., the plaintiff must prove that the Secretary's acts were wrongful. Clearly, the bases for these claims are founded on the Medicare Act and must be presented to the Board before they may be addressed by a federal court for if the Board were to determine that the claims were without merit, the claim for punitive damages would not exist. Therefore, we hold that

Homewood's constitutional tort claims against the individual defendants and the procedural due process claims against the Secretary arise under the Medicare Act. Accordingly, as a condition precedent under 42 U.S.C. § 405(h), made applicable to the Medicare Act under § 1395ii and under § 1395oo (f)(1), Homewood must initially present these claims to the Board and receive a final decision from the Secretary before invoking the jurisdiction of the Federal district court.

## B. 42 U.S.C. § 1395y(d)—JURISDICTION UNDER THE MEDICARE ACT.

Relying on a decision by the Ninth Circuit which has since been withdrawn, *Klein v. Heckler*, 722 F.2d 510 (9th Cir.1983),[3] Homewood maintains that the district court had subject matter jurisdiction under 42 U.S.C. § 1395y(d), which provides in pertinent part:

> "(1) No payment may be made under this subchapter with respect to any item or services furnished to an individual by a person where the Secretary determines under this subsection that such person—
>
> > "(A) has knowingly and willfully made, or caused to be made, any false statement or representation of a material fact for use in an application for payment under this subchapter or for

use in determining the right to a payment under this subchapter;

> \*    \*    \*    \*    \*    \*
>
> "(3) Any person furnishing services described in paragraph (1) who is dissatisfied with a determination made by the Secretary under this subsection shall be entitled to reasonable notice and opportunity for a hearing thereon by the Secretary to the same extent as is provided in section 405(b) of this title, and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title."

Homewood reasons that its payments were suspended under § 1395y(d)(1)(A) and that it was entitled to the review procedure set forth in § 1395y(d)(3). Homewood concludes from its allegations that review by the Board "does not provide an adequate remedy because the Board lacks the power to hold a hearing on Homewood's suspension or claims its rights under the Constitution and Medicare Act were violated. Therefore, the district court's dismissal should be reversed because 42 U.S.C.A. § 1395y(d)(3) provides a basis for jurisdiction."

■ A review of the legislative history of § 1395y(d) reveals that its purpose is to exclude from *future* participation in the Medicare program any nursing home or provider that has defrauded the program.[4]

---

**3.** After this opinion was released on June 12, 1985, the Secretary provided the court on June 19, 1985 a copy of the slip opinion in *Klein*, released by the Ninth Circuit on May 27, 1985, 761 F.2d 1304. In the new version of *Klein*, the Ninth Circuit addressed the question of whether the plaintiffs' payment had been suspended under 42 C.F.R. § 405.370–373 or under 42 U.S.C. 1395y. The court held that, contrary to the Secretary's assertion, the payments were not suspended under 42 C.F.R. § 405.370–373 because: (1) a suspension under that regulation must be initiated by the intermediary—the plaintiffs' suspension was initiated by the Secretary; and (2) the regulation requires proof of fraud and the plaintiffs were suspended after being acquitted of fraud. Unlike in *Klein*, the plaintiff in this case was suspended by the intermediary, was no longer participating in the Medicare program, and was not acquitted of fraud before the payments were suspended. Because *Klein* presented a different issue, our analysis of the plaintiff's argument is not affected by the new version of the opinion.

**4.** "Present law does not provide authority for the Secretary to withhold *future* payments for services furnished by an institutional provider of services, a physician, or any other supplier who either abuses the program or endangers the health of beneficiaries, although payment for past or current claims may be withheld on an individual basis where the services are not reasonable or necessary for treatment of illness or injury or where the supplier fails to provide the necessary payment information.

"Your committee believes it important to protect the medicare, medicaid, and maternal and child health programs and their beneficiaries from those suppliers of services who have made a practice of furnishing inferior or harmful supplies or services, engaging in fraudulent activities, or consistently overcharging for their services. Such protection is not now provided under the law. For example, if a physician is found guilty of fraud in connection with the furnishing of services to a medicare beneficiary, there is no authority

Homewood voluntarily left the Medicare program in 1977 and its payments were suspended in 1979. The Secretary did not, and could not, properly exclude Homewood from the Medicare program under section 1395y(d), because Homewood voluntarily left the program in 1977 and that section applies only to future participation in the Medicare program. Instead, the Secretary notified Homewood that the suspension was imposed in accordance with 42 C.F.R. § 405.371(b) which provides that no prior notice of suspension is required where the "circumstances giving rise to the need for a suspension of payments involves fraud or willful misrepresentation." Homewood's payments were suspended under 42 C.F.R. § 405.371(b), not section 1395y(d). Accordingly, we refuse to address Homewood's inaccurate statement of the law on which they premise Federal court jurisdiction under § 1395y(d)(3).

## C. 28 U.S.C. § 1361—MANDAMUS JURISDICTION.

Homewood next contends that the Secretary failed to issue regulations providing "for a hearing on the suspension issue [thus violating] the express provision of 42 U.S.C.A. § 1395y(d)(3) (West Supp.1983). Homewood requested a hearing and exhausted its administrative remedies on this issue." Homewood argues that because it "has a clear right to the relief sought and the Secretary has a clear duty to do the act in question," the district court had jurisdiction to issue a writ of mandamus directing the Secretary to provide the hearing specified by § 1395y(d).

■ In this circuit, it is well-settled that mandamus jurisdiction may be invoked only when the following three elements are present:

"(1) a clear right in the plaintiff to the relief sought;

(2) a plainly defined and peremptory duty on the part of the defendant to do the act in question;

(3) no other adequate remedy available."

*Americana Healthcare Corp. v. Schweiker,* 688 F.2d 1072, 1084 (7th Cir.1982), *cert. denied,* 459 U.S. 1202, 103 S.Ct. 1187, 75 L.Ed.2d 434. In *Americana Healthcare,* this court held that the mandamus remedy is only available "under *exceptional* circumstances of *clear illegality.* When the performance of official duty calls for a construction of governing law, the [federal] officer's interpretation will not be disturbed by a writ of mandamus unless it is *clearly wrong* and his official action is arbitrary and capricious." *Id.* (Emphasis added). A mere mistake of law or an erroneous factual finding is not the type of clear-cut abuse of discretion or "usurpation of power" necessary for our use of the extraordinary remedy of mandamus. *De Beers Consol. Mines, Ltd. v. United States,* 325 U.S. 212, 217, 65 S.Ct. 1130, 1132, 89 L.Ed. 1566 (1945).

■ As we have previously explained, Homewood's payments were suspended under 42 C.F.R. § 405.370 *et seq.,* not under § 1395y(d), because the intermediary had reliable evidence that Homewood had submitted fraudulent cost reports. Because § 1395y(d) is not applicable in this case, there is no "clear right" to the relief sought, no "exceptional circumstances of clear illegality," no "clearly wrong" interpretation of governing law, and no "plainly defined and peremptory duty" to give Homewood a hearing on the temporary suspension of payments. Furthermore, the temporary suspension of payments was lifted by the intermediary. It is difficult to understand what Homewood would gain if we were to order a hearing on a temporary suspension of payments that terminated nearly three years ago. We hold that

---

under present law to bar payment on his subsequent claims so long as the physician remains legally authorized to practice. States can, and some do, bar from medicaid providers who abuse the program, but they are not now required to do so.

"Under your committee's bill, the Secretary would be given authority to terminate or sus-

pend payments under the medicare program for services rendered by any supplier of health and medical services found to be guilty of program abuses."

H.R.Rep. No. 231, 92nd Cong. 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Ad.News 4989, 5085 (emphasis added).

Homewood has failed to satisfy the three-prong test for mandamus jurisdiction set forth in *Americana Healthcare,* and we agree with the decision of the district court that mandamus relief could not issue in this case.[5]

### D. 42 U.S.C. § 1395*oo* —STATUTORY JURISDICTION.

■ Finally, Homewood argues that the district court had subject matter jurisdiction under 42 U.S.C. § 1395*oo* (f)(1) which provides for judicial review of final decisions by the Board:

"Providers shall have the right to obtain judicial review of any final decision of the Board, or of any reversal, affirmance, or modification by the Secretary, by a civil action commenced within 60 days of the date on which notice of any final decision by the Board or of any reversal, affirmance, or modification by the Secretary is received. Providers shall also have the right to obtain judicial review of any action of the fiscal intermediary which involves a question of law or regulations relevant to the matters in controversy whenever the Board determines (on its own motion or at the request of a provider of services as described in the following sentence) that it is without authority to decide the question, by a civil action commenced within sixty days of the date on which such determination is rendered."

Homewood asserts that it should not be required to receive a final decision as to its constitutional questions from the Board prior to the filing of its action in the district court because "the Board by its own rules is not empowered to decide constitutional issues." Homewood contends that because no purpose would be served by requiring it to present its claims to the Board, exhaustion of its remedies before the Board would be futile and should not be required. Thus, the issue as framed in Homewood's pleadings is whether obtaining a final decision by the Board on all issues, including constitutional questions, is mandatory under sec-

tion 1395*oo* (f)(1) before seeking judicial review.

In *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court addressed the question of whether failure to obtain the final decision required by section 405(g) precluded federal question jurisdiction for a claim under the Social Security Act. The Court held that the section 405(g) requirement of a final decision by the Secretary after a hearing

"consists of two elements, only one of which is purely 'jurisdictional' in the sense that it cannot be 'waived' by the Secretary in a particular case. The waivable element is the requirement that the administrative remedies prescribed by the Secretary be exhausted. The non-waivable element is the requirement that a claim for benefits shall have been presented to the Secretary. Absent such claim there can be no 'decision' of any type. And some decision by the Secretary is clearly required by the statute."

*Id.* at 328, 96 S.Ct. at 899. Section 1395*oo* (f) provides for judicial review of final decisions by the Board on payment disputes and "question[s] of law or regulations relevant to the matters in controversy whenever the Board determines ... that it is without authority to decide the question." Like section 405(g), section 1395*oo* (f)(1) requires a party (1) to present a claim to the Secretary, and (2) to exhaust the administrative remedies prescribed by the Secretary. *Cf. Eldridge,* 424 U.S. at 328, 96 S.Ct. at 899. Read generously, Homewood at best merely presents two types of claims: a reimbursement dispute and a claim that it was deprived of its property without due process of law. The reimbursement claim currently is pending before the Board. Because a reimbursement cannot be characterized as "collateral to a claim for benefits," we must defer to the Secretary's decision that the requirement of administrative exhaustion should not be waived. As to constitutional questions relevant to disputes between providers and intermedi-

---

5. Furthermore, the plaintiff's complaint that the Secretary has failed to promulgate regulations providing the hearing required by § 1395y(d) is in error. The hearing procedure is provided in 42 C.F.R. § 420.100, *et seq.*

aries for claims in excess of $10,000, § 1395*oo* (f) provides that the Board may determine (on its own motion or at the request of the provider) that it is without authority to decide the constitutional question involved in the dispute. The fact that the statute allows the Board to decide whether a constitutional question is beyond its authority cannot be logically interpreted to mandate the dispensing of the requirement that constitutional questions raised by disputes properly before the Board must be presented to the Board in conjunction with the financial dispute. Indeed, requiring the presentation of constitutional questions to the Board is "manifestly reasonable, since it assures the Secretary the opportunity prior to constitutional litigation to ascertain, for example, that the particular claims involved are neither invalid for other reasons nor allowable under other provisions of the [Medicare] Act." *Salfi,* 422 U.S. at 762, 95 S.Ct. at 2465. Because the Medicare Act clearly requires the presentation of all disputes including any and all constitutional questions to the Board, we hold that the requirement that the constitutional question be presented is non-waivable. *Cf. Eldridge,* 424 U.S. at 328, 96 S.Ct. at 899. Homewood's constitutional claim for deprivation of property without due process of law is based on the alleged bad acts of the "unknown federal officials and agents" and is also based on the Secretary's alleged "issuing [of] regulations which do not provide for a hearing in the case of a suspension for fraud or willful misrepresentation, ... denying it at least a post-suspension hearing on the suspension issue, and ... failing to reach a final resolution regarding its [second cost report]." A review of the record discloses that the plaintiff has failed to present these claims to the Board. Because the plaintiff has not satisfied the non-waivable jurisdictional element of § 1395*oo* (f)(1)—presentation of its claim to the Secretary before filing for relief in the Federal courts—it is barred from judicial review by section 405(h).

### III

The decision of the district court dismissing the complaint for lack of subject matter jurisdiction is AFFIRMED.