COUNTY OF SAN DIEGO, a political subdivision of the State of California; and Richard J. Thompson, Conservator of the Persons of Joseph M. and Norman H., Conservatees, Plaintiffs,

v.

Otis BOWEN, M.D., Secretary of the United States Department of Health and Human Services; Richard P. Kusserow, Inspector General of the Department of Health and Human Services; and James F. Patton, Defendants.

Civ. No. 86–0262–E(I).

United States District Court,
S.D. California.

March 4, 1986.

Lloyd M. Harmon, Jr., County Counsel, San Diego County, Daniel J. Wallace, Chief Deputy by Phillip L. Kossy, Deputy, Thomas E. Montgomery, Deputy, for plaintiffs.

Peter K. Nunez, U.S. Atty., John J. Robinson, Asst. U.S. Atty., for defendants.

## MEMORANDUM DECISION

ENRIGHT, District Judge.

### BACKGROUND

The San Diego County Mental Health Facility at Hillcrest ("CMH") is a licensed 92 bed acute psychiatric hospital for adults. CMH has been in operation since 1965. This is the first time that the facility has been sanctioned by the Medicare program; the state has never sanctioned the facility.

As a Medicare hospital, CMH receives reimbursement for treating many of its patients. However, on January 21, 1986, the Secretary of Health and Human Services ("HHS") issued an order excluding CMH from Medicare reimbursement for three years.

To qualify for Medicare reimbursement, a health care provider must deliver services (1) economically and only when medically necessary, (2) that meet professionally recognized standards, and (3) supported by evidence of necessity and quality. Failure to comply may result in sanctions, including temporary or permanent exclusion; however, the health care provider is entitled to a post-exclusion hearing and, ultimately, judicial review.

Several agencies were involved in the decision to exclude CMH from Medicare reimbursement. First, HHS is responsible for administering the Medicare program. Second, the Office of the Inspector General ("OIG") decides if a health care provider should be sanctioned. Third, the Health Care Financing Administration ("HCFC") periodically monitors the performance of health care providers. Fourth, California Medical Review, Inc. ("CMRI") is a private Peer Review Organization ("PRO") that contracted with HHS to conduct peer evaluations of California health care providers. And, fifth, the California Department of Health Services is a state agency that administers health care.

Apparently, HHS' inquiry into the quality of care offered at CMH began in May 1985. On May 3, 1985, Larry Stirling, Assemblyman for the 77th District, wrote to CMRI requesting an investigation by the federal government. Mr. Stirling appended documented charges of medical misconduct.

Approximately May 10, 1985, CMRI began to review patient charts and records. Several days later, CMRI reported finding one deficiency. However, on June 25, 1985, CMRI began to review the patient charts originally surveyed in May.

On July 31, 1985, CMRI informed CMH that there were gross and flagrant violations of quality care found in three patient charts, and substantial violations in twenty-six charts. On August 7, 1985, CMRI reported to CMH that there were three additional substantial violations. CMH requested a meeting with CMRI.

CMRI and CMH met on August 27, 1985. The same day, CMRI informed CMH by letter that it would report the substantial violations in the twenty-six patient charts to the OIG. The letter specified that CMH could submit additional information or request a meeting within thirty days.

On September 12, 1985, CMRI conducted a brief follow-up visit to the CMH facility. On September 18, 1985, CMRI reached an internal decision to report the gross and flagrant violations to OIG as well.

On September 27, 1985, CMRI internally reaffirmed its initial decision that there had been violations, and on September 30, 1985, CMRI internally recommended excluding CMH from further Medicare reimbursement.

CMRI formally submitted its findings of gross and flagrant violations and substantial violations of quality patient care to the OIG on October 18, 1985. CMRI advised CMH of its recommendation on the same

date, and informed CMH that it could submit a response within thirty days.

On November 22, 1985, CMH responded to the OIG, listing five objections. CMH complained that (1) CMRI did not consider CMH's willingness and ability to comply with the standards of quality, (2) the recommendation was based solely on past patient charts, (3) CMRI should have considered that CMH did not have any prior record of sanctions, (4) the decision would be harmful to the community because there were no viable alternative facilities, and (5) CMH did not have a meaningful opportunity to respond to the CMRI recommendation during critical decision making processes.

On January 27, 1986, the OIG determined that there had been gross and flagrant and substantial violations in patient care at CMH. Consequently, CMH was delivering services considered inappropriate, unnecessary, below the recognized professional standards, or inadequately supported by documentation. The OIG based the decision on (1) the CMRI report and (2) CMH's response on November 22, 1985.[1]

Concurrent with CMRI's peer evaluation, the California Department of Health Services initiated a Medicare survey of CMH. Surveys were conducted on various dates in July, August and September 1985. The state Department of Health Services completed a report noting various deficiencies and sent it to HCFA and HHS. A more complete survey was undertaken in November and December 1985.

## DISCUSSION

Two questions must be addressed in ruling on the County's application for a preliminary injunction. First, the extent of this court's jurisdiction must be delineated.

See Heckler v. Ringer, 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984). Second, the court must weigh the likelihood that the County will succeed on the merits, the possibility of irreparable harm resulting from refusing the preliminary injunction, and whether the public interest favors the preliminary injunction. See Regents of the University of California v. ABC, Inc., 747 F.2d 511, 515 (9th Cir.1984).

I.

## JURISDICTION

Section 1156 of the Social Security Act, 42 U.S.C. § 1320c–5 (1982), sets forth the obligations of health care providers to qualify for Medicare reimbursements. The sanctions and penalties for failing to comply with those obligations appear in section 1156(b) of the Act. Section 1156(b)(4), 42 U.S.C. § 1320c–5(b)(4) (1982), states:

> Any practitioner or person furnishing services ... who is dissatisfied with a determination made by the Secretary under this subsection shall be entitled to reasonable notice and opportunity for a hearing thereon by the Secretary to the same extent as is provided in section 405(b) of this title, and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title.

According to section 405(g), judicial review is limited to "final decisions" of the Secretary, 42 U.S.C. § 405(g) (1982). Thus, a health care provider who is dissatisfied with a penalty or sanction issued pursuant to 42 U.S.C. § 1320c–5(b) may seek judicial review only after the Secretary has reached a final decision on the merits of the sanctions.[2]

---

1. The County contends that the OIG considered additional information in reaching its decision. Additional information may have been considered, but it does not appear that the OIG actually based its decision on that material. Instead, the OIG often referred to the additional information, such as the HCFA and Department of Health Services report, as an indication that CMH was improving the quality of its care.

2. At one point, the County appears to assert that this court has general federal question jurisdiction over the merits of the OIG's decision to exclude CMH from reimbursement. Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), however, firmly established that the district court may not review agency action on its merits prior to a final decision by the Secretary. As the Seventh Circuit recently summarized,

The regulations implementing 42 U.S.C. § 1320c–5 are found at Part 474, Subpart C of Title 42 of the Code of Federal Regulations. 42 C.F.R. § 474.58 describes the right of a health care provider to appeal sanctions or penalties issued pursuant to 42 U.S.C. § 1320c–5(b). The regulation provides:

> A practitioner or other person dissatisfied with an OIG determination or an exclusion ... is entitled to a hearing before an Administrative Law Judge and may also request a review of that decision by the Appeals Council....

In short, the statutory and regulatory scheme precludes judicial review of a sanction determination by the OIG until the health care provider has appealed to the Administrative Law Judge and the Appeals Council; the health care provider must exhaust administrative remedies as a predicate to permitting judicial review under 42 U.S.C. § 405(g).[3]

There are, however, two exceptions to the exhaustion or finality requirement. In *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), the Court held that the Secretary could waive the exhaustion requirement by failing to accommodate meaningful review. Then, in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Court held that a disability benefits claimant challenging a

[3]. The County asserts two additional possible grants of jurisdiction. First, the County cites the All Writs Act, 28 U.S.C. § 1651(a). Section 1651(a), however, does not confer jurisdiction, but aids the district court in its exercise of jurisdiction once it has been established. Consequently, section 1651(a) does not enable this court to review the merits of the OIG's decision to exclude CMH from Medicare reimbursement.

wholly collateral procedural issue, and who would be harmed by the termination of benefits before a final decision by the Secretary, could establish jurisdiction without exhausting administrative remedies. Thus, the requirement of exhaustion or a final decision on the merits is waivable. And, it may be waived either by the Secretary as in *Weinberger, supra,* or by the courts as in *Mathews, supra.* *Heckler v. Ringer,* 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984).

The Court of Appeals for the Seventh Circuit recently summarized the two circumstances in which waiver is proper:

> A court may waive the exhaustion requirement when the plaintiff's claims are entirely collateral to his claim of entitlement and when the plaintiff's interest in having the issue resolved promptly is sufficiently great so as to render deference to the agency's judgment inappropriate. [Citation omitted]. Waiver is also appropriate where the pursuit of administrative remedies would be futile because the Secretary's position on the statutory issues is "final." [Citations omitted].

*Johnson v. Heckler,* 769 F.2d 1202, 1207 (7th Cir.1985). *See also Marcus v. Heckler,* 620 F.Supp. 1218, 1220–21 (N.D.Ill. 1985).

Second, the County argues that there is jurisdiction under the Mandamus Act, 28 U.S.C. § 1361. In *Heckler v. Ringer,* 466 U.S. at 615–16, 104 S.Ct. at 2022–23, the Court rejected the claimants' contention that there was federal court jurisdiction based on the Mandamus Act. The Court clarified:

> The common law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty. [Citation omitted].

The County has adequate remedies for challenging the OIG's decision. The County may appeal to the Administrative Law Judge and then to the Appeals Council. Thus, jurisdiction under the Mandamus Act is not proper. *See also Marin v. HEW, Health Care Financing Agency,* 769 F.2d 590, 594 (9th Cir.1985).

[i]n *Salfi,* the Supreme Court interpreted section 405(h) to require exhaustion of administrative remedies as a condition precedent to obtaining federal question jurisdiction in action seeking either to establish an entitlement to payments under the Social Security Act or to remove a legal barrier to recovery of such payments.

*Homewood Professional Care Center, Ltd. v. Heckler,* 764 F.2d 1242, 1246 (7th Cir.1985). Thus, a final decision by the Secretary is a prerequisite to this court's assumption of jurisdiction over the merits of the OIG's decision.

In *Heckler v. Ringer,* 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984), the Court held that there was no jurisdiction to review the Secretary's initial determination that certain surgical expenses were not reimbursable. The plaintiffs had not appealed the Secretary's ruling to the Administrative Law Judge or to the Appeals Council. The plaintiffs argued that the court should waive the exhaustion or finality requirement because their challenge was procedural and collateral. Disagreeing, the Court stated:

> It seems to us that it makes no sense to construe the claims of those three respondents as anything more than, at bottom, a claim that they should be paid for their BCBR surgery. Arguably, respondents do assert objections to the Secretary's "procedure" for reaching her decision—for example, they challenge her decision to issue a generally applicable rule rather than allow individual adjudication, and they challenge her alleged failure to comply with the rulemaking requirements of the APA in issuing the instructions and the rule. We agree with the District Court, however, that those claims are "inextricably intertwined" with respondents' claims for benefits.

*Heckler v. Ringer,* 466 U.S. at 614, 104 S.Ct. at 2021.

Thus, this court's jurisdiction is limited to considering the County's claims that HHS violated wholly collateral due process rights, the substantive correctness of the Secretary's decision to exclude CMH from Medicare reimbursement is not at issue.

## II.

### PRELIMINARY INJUNCTION

Injunctive relief is proper if the court determines that three criteria are satisfied. These were recently summarized as follows:

> Under this traditional test a preliminary injunction is justified when: (1) the moving party has established a strong likelihood of success on the merits; (2) the balance of irreparable harm favors the moving party; and (3) the public interest favors the issuance of an injunction.

*Regents of the University of California,* 747 F.2d at 515.

■ To succeed on the merits, the County must establish that HHS violated CMH's right to due process and that the alleged violations were wholly collateral to the substantive correctness of the Secretary's decision. On the facts currently before the court, the County has failed to establish that there is any likelihood of succeeding in this showing. It appears that HHS complied fully with the regulations promulgated to implement 42 U.S.C. § 1320c–5, and the County has not shown those regulations to be constitutionally suspect.[4]

The regulatory scheme for sanctioning health care providers involves both the PRO and the OIG. First, the regulations require health care providers to comply with the three statutory obligations—to provide economical and medically necessary care, of a quality that meets professionally recognized standards, and that can be supported by evidence. 42 C.F.R. § 474.20 (1985). Sanctions may be imposed for failing to meet those obligations. 42 C.F.R. § 474.32 (1985).

Second, the PRO, or CMRI in this case, must inform the OIG if a health care provider either (1) substantially violates its obligations in a substantial number of cases, or (2) grossly and flagrantly violates its obligations in any case. 42 C.F.R. § 474.34 (1985). For either determination, the PRO must notify the health care pro-

---

**4.** The County appears to argue that the regulations provide insufficient due process because the OIG did not invite the County to submit additional evidence concerning the current quality of the care at CMH and the improvements that the facility had made since the beginning of the review by CMRI. But, the OIG review and sanction process is aimed at determining whether there have been past violations. The OIG provides an opportunity for a sanctioned facility to reapply for reimbursement. Presumably, the health care provider's improvements and the current quality of the care are proper subjects during application for the reinstatement as a health care provider entitled to reimbursement.

vider in writing and the notice, generally, must specify the obligations violated, the situation, the basis for the determination, the possible sanctions, and that the health care provider has thirty days to respond. For substantial violations in a substantial number of cases, the PRO must send a summary of relevant information; for gross and flagrant violations, the PRO must send copies of the pertinent documents. 42 C.F.R. § 474.36–474.48 (1985).

It is clear from the record in this case that CMRI complied with the applicable regulations. On July 31, 1985, CMRI sent CMH two letters, one concerning the substantial violations and one concerning the gross and flagrant violations. The contents of those letters comply with the regulations. See Exhibit 7 to Defendant's Memorandum of Points and Authorities in Opposition to Application for Temporary Restraining Order and Injunctive Relief (hereinafter "Defendant's Opposition").

After the health care provider has had an opportunity to respond, the PRO must make its final determination. The health care provider must be informed in writing of this determination. 42 C.F.R. § 474.-29(c) (1985).

On August 27, 1985, CMRI and CMH met and discussed the substance of CMRI's letters of July 31, 1985. Apparently, CMRI did not submit any written response to those letters. CMRI determined that the CMH violations should be reported to the OIG. On October 18, 1985, CMRI informed CMH by letter that its recommendation had been submitted to HHS and the OIG. See Exhibit 11 to Defendant's Opposition.

The PRO also sends its determination and recommended sanction to HHS and the OIG. A report must accompany the recommendation, specifically including the identification of the health care provider, the type of services provided, a description of each failure to comply, relevant documents, copies of written correspondence and summaries of oral communications, the PRO's determination that obligations were violated, the PRO's professional qualifications and the recommended sanction. 42 C.F.R. § 474.39(a)–(b) (1985). In recommending a sanction, the PRO is directed to specify the type, amount and length of the sanction, and whether the health care provider has been unable or unwilling to comply with its obligations. 42 C.F.R. § 474.39(c) (1985).

The CMRI report complied with these requirements. See Exhibit 12 to Defendant's Opposition.

The County has argued repeatedly that CMRI did not consider CMH's ability and willingness to comply with its obligations. However, the CMRI report states that it has found CMH unable to comply with the statutory obligations. It would appear, therefore, that the County is complaining that CMRI reached an incorrect conclusion concerning CMH's ability to comply. But, this court's jurisdiction is limited; the merits of CMRI's conclusion cannot be reviewed by this court until after the Secretary has reached a final decision.

The regulations require the PRO to base its recommended sanction on several factors: (1) the type of offense or violation; (2) the severity; (3) the deterrent value; (4) the health care provider's previous sanction record; (5) the availability of alternative sources in the community; and (6) any other factors. 42 C.F.R. § 474.41 (1985).

Exhibit 8 to Defendant's Opposition, a letter dated October 31, 1985, demonstrates that CMRI complied with regulation 474.41.

The County contends that CMRI did not consider the availability of alternative sources of care in the community. Exhibit 8, however, refers to contractual arrangements with other inpatient facilities.[5]

5. The County complains that OIG referred to a statistical report by the Blue Cross in determining that there are available alternative sources of care in the community. However, CMH never submitted any data on its own to the OIG on this matter. Instead, the County merely asserts that it did not have an opportunity to rebut the Blue Cross statistics. As the Secretary points out, however, the OIG decision to sanction CMH is based on the violations and the quality of care; the availability of alternatives must be considered prior to exclusion, but whether there are available alternatives is actually ancillary to the sanction issue.

Clearly, CMRI considered the availability of alternatives, and the County must be asserting that CMRI reached the wrong conclusion. This court's jurisdiction, however, is limited to reviewing if CMRI complied with the regulations; the correctness of the conclusion may not be reviewed until the Secretary has reached a final decision on the merits.

Finally, the OIG must also comply with numerous regulations in deciding whether to follow the PRO's determination and recommended sanction. The OIG must notify the health care provider in writing. The notice must address, generally, the same items that are contained in the PRO's report. In addition, the OIG must inform the health care provider of its appeal rights. 42 C.F.R. §§ 474.42–474.52 (1985). Three items that the OIG must specifically consider are the health care provider's (1) willingness and ability to comply with its obligations, and (2) previous sanction record, and (3) the availability of alternative sources of care. 42 C.F.R. § 474.42 (1985).

The County has asserted that the OIG's decision to exclude CMH from reimbursement did not take the three items listed above into consideration. But, Exhibit 13, the notice to CMH of OIG's decision dated January 27, 1986, goes through each of the items set forth in the regulation. This discussion includes the OIG's conclusion that despite substantial improvements, CMH was still unable to comply with its statutory obligations. In addition, the OIG noted that CMH had not been sanctioned previously and that there were alternative sources of care in the community.

■ Thus, the OIG followed the regulations and considered each of the factors mandated. Consequently, it appears that the County does not have any likelihood of succeeding on the claim that it may bring under the limited jurisdiction of this court, and the preliminary injunction must be denied.[6]

## CONCLUSION

In *Heckler v. Ringer,* 466 U.S. at 627, 104 S.Ct. at 2028, the Court concluded that

[i]n the best of all worlds, immediate judicial access for all of these parties might be desirable. But Congress, in § 405(g) and 405(h), struck a different balance, refusing declaratory relief and requiring that administrative remedies be exhausted before judicial review of the Secretary's decisions takes place. Congress must have felt that cases of individual hardship resulting from delays in the administrative process had to be balanced against the potential for overly casual or premature judicial intervention in an administrative system that processes literally millions of claims every year. If the balance is to be struck anew, the decision must come from Congress and not from this Court.

Congress, in section 1156 of the Social Security Act, 42 U.S.C. § 1320c–5 (1982), established that health care providers could appeal decisions of the OIG to an Administrative Law Judge and then the Appeals Council. The decision becomes final only after the health care provider has completed the internal administrative review procedures available. If the health care provider remains dissatisfied, judicial review is appropriate pursuant to 42 U.S.C. § 405(g).

Prior to a final decision by the Secretary, this court's jurisdiction is limited to procedural issues that are wholly collateral to the merits. In contrast, it appears that the Administrative Law Judge and the Appeals Council may scrutinize the merits of the OIG's decision to exclude CMH from Medicare reimbursement. Accordingly, this court must refrain from interfering with the balance that Congress established.

■ A preliminary injunction may issue only if the moving party demonstrates that there is a strong likelihood of success on

---

**6.** It is not necessary for this court to determine whether the County has sustained its burden of showing that it will suffer irreparable harm and that the public interest favors issuance of the preliminary injunction. Both parties, however, presented argument on the question of irreparable injury and public interest.

the merits of the claim. The County has not shown that there were procedural violations that were wholly collateral to the merits of the Secretary's decision. Thus, upon due consideration of the parties' memoranda and exhibits, the arguments presented at the hearing and for the reasons set forth herein, this court hereby denies the preliminary injunction.